## GANAWAY vs. THE STATE.

1. When an indictment is lost or destroyed, it cannot be substituted on satisfactory proof to the court of a copy, (Justices Goldthwaite and Gibbons *dissenting*.)

ERROR to the City Court of Mobile.

Tried before the Hon. ALEX. McKINSTRY.

The plaintiff in error was indicted, at the September term, 1850, of the City Court of Mobile, for an assault and battery on one Isabella King. The cause was continued for several successive terms; and at the February term, 1852, the solicitor for the State moved the court for leave to substitute a copy of the indictment for the original which had been lost or destroyed. The minute entry in the record recites, that it was satisfactorily proved to the court, by the testimony of the clerk of the court and the late solicitor by whom the indictment was drawn, that the paper offered was a correct copy of the original indictment, which had been returned into court by a regular grand jury, and had been lost or destroyed; and that the defendant had had two days' notice of the motion, and that the copy proposed to be substituted was then filed in court. The court granted the motion, and the defendant was tried on the substituted copy.

The ruling of the court in allowing the substitution, is now assigned for error, with other matters which it is unnecessary to notice.

GEO. N. STEWART and C. W. RAPIER, for plaintiff in error:

It was error to substitute an indictment for that which was lost. The general rule, that a court has power to supply the loss of papers in a cause before it, does not apply to indictments. An indictment is something more than an ordinary record of the court in which it is filed. It does not originate therein, as other proceedings. Its existence and vitality depend upon its being the solemn act of a grand jury. The court has no power over it, to add to, subtract from, or alter it in any material part.

Ganaway v. The State.

The statutes of jeofails have never, either in this country or in England, been held to apply to indictments. 2 Hale's Pleas of the Crown, 193; 8 Mass. 65; 13 Pick. 200; 13 Smedes & M. 259.

The substitution of an indictment should not be allowed, because the defendant has the right not to be subjected to trial, in a criminal case, except on the immediate and formal charge of a grand jury, made in the manner prescribed by law; and also, because he has the right to object to, and take advantage of any defects in words or substance of the indictment as found by the grand jury, without amendment by the court; and this he cannot do, if a newly framed indictment, reformed by the solicitor, may be brought against him. See Wharton's Criminal Law 128; 10 New Hamp. 558.

PERCY WALKER, *contra*:

There was no error in allowing the substitution for the lost indictment. This court has repeatedly held, that the Circuit Courts have the power to supply a new record, where the original has been lost; and that this power is independent of express legislation. 8 Porter 309; 19 Ala. 710, and cases there cited. In the case of McLendon v. Jones, 8 Ala. 298, it is said that the authority exists in virtue of the full and plenary powers with which these courts are invested, "to administer ample justice to all persons according to law." Clay's Digest 294 § 29. All that is required is, proof of the loss, and that notice has been given to the party to be affected. The above ruling is a general one. 4 Iredell 81; 1 Richardson 520; 1 Pick. 109; 23 ib. 184; 18 ib. 175; 6 Vermont 395; 3 John. 448; 1 Caines 496; 3 Hen. & Mun. 237.

Under the statutes organizing the City Court of Mobile, its jurisdiction is as extensive as that of the Circuit Courts, except as to real actions.

There is no reason why this power of substitution should be restricted to civil cases, nor can authority be found for such restriction; on the contrary, it has long been settled, that, if any part of the proceedings in criminal cases be stolen or lost, the deficiency may be supplied by a new entry. 1 Chitty's Criminal Law 722; 1 Strange 140; 2 ib. 833, 1077, 1264; 3 Caines 104. The manner of supplying the record in England,

is different from the one adopted in this case; but that does not affect the question.

PHELAN, J.—The court below allowed an indictment, which has been lost or destroyed, to be substituted by satisfactory proof of a copy.

The right of a court to supply or substitute any part of the record, which has been lost or destroyed, in a civil case, is acknowledged, and the reason for it is satisfactory. Wilkerson v. Branham, 5 Ala. 608.

It may be said, there is no good reason for the right to substitute a part of the record in a civil case, which will not apply with equal or nearly equal force in a criminal proceeding. In respect to other parts of the record or proceedings, even in a criminal case, we are not now called upon to decide that, in fact, the same rule does not apply. But the question here is, can an indictment be substituted before trial?

No authority, strictly in point, as we conceive, either English or American, has been shown, going to this extent; and they have been examined with some care.

An indictment in a criminal proceeding, it is argued, stands in place of a declaration in a civil suit, and is regulated, to a great extent, by the rules which govern declarations; and where is the reason for admitting the former to be supplied by copy, if lost, which does not hold good as respects the latter? It is not the mere paper that constitutes the accusation, but the contents of that paper. The paper may be destroyed; but the thing—the accusation lawfully preferred—will remain as before. This is not conceded to the full extent.

In criminal proceedings, we are, in many cases, bound by settled principles of law and practice, to consider not only that which abstractly exists, but a certain visible, external form as essential to the legal existence and sufficiency of the thing itself. For instance, what authority in law will protect an officer in arresting my person on a criminal charge, or require of me to submit to the arrest? Will a copy of a warrant do? Not at all. It must be the original, lawful warrant itself, which I have a right to call for and inspect. This rule, we are inclined to think, has been commonly applied to indictments. The prisoner has been supposed to have a right to

have an inspection of the indictment found, and to be arraigned on that only.

But conceding that a declaration and an indictment are alike in many respects, in some other respects there is a very marked difference between them. In their origin this is strikingly so. A declaration is a statement of his cause of action, made by the party himself, or his counsel, not under oath. An indictment is a statement of the facts which constitute the alleged offence against the public, on the part of the accused, made under oath by a grand jury, and which, to be good in law, must have certain formalities; and, by the constitution of this State, even certain words are essential. The one is good, even though it be not signed by counsel. The other is nothing, if it does not bear the name of the foreman of the grand jury, and the words "a true bill." These are indispensable marks of an indictment. The one may be changed at pleasure, by leave of the court. The other cannot be altered or changed in the slightest degree, by any power, after it has been returned into court, and the grand jury is discharged. The statutes of *jeofails*, which, in general terms, authorize corrections and amendments in process and pleadings, have never been held to apply to indictments.

The power of substitution is claimed, as a power inherent in every court, to supply such papers, or parts of the record, as may have been lost by accident or destroyed, which constitute a necessary part of the proceedings.

It may be granted, that a court has, and ought to have, power to supply copies or duplicates of all parts of the record or proceedings which emanated from it, or under its authority in the first instance; because the power which could make the original, ought to be, at all times, able to supply a copy, if that be lost or destroyed. This power will cover every part of a civil proceeding, from the summons or writ to the judgment and execution.

But this power does not embrace an indictment. The court has no power to make an indictment, or to direct one to be made. That power resides exclusively with the grand jury. Admitting, then, that a court may supply or substitute whatever part of the proceedings it has power to issue or create in the first instance, yet the principle will not embrace an in-

dictment, because the court has no power to make that, or to direct it to be made. In the matter of preferring indictments, the grand jury are the sole judges, under their oath, of the propriety of their own action.

In a civil proceeding the defendant must be in court, before a declaration can be filed; but in a criminal proceeding, the indictment is very often found and filed, before the defendant is arrested.

Now we have decided, that a declaration may be substituted without notice to the defendant, on proof satisfactory to the court, upon the ground, that the lost declaration was a paper of the court. 5 Ala. 688. If we hold the same doctrine to apply to an indictment, one may be lost and substituted before the defendant is arrested, and he may be required to plead to a copy the contents of which he did not have an opportunity to contest.

In these considerations, or some of them, may be found, as we conceive, the reason for the rule of practice, which prevails generally throughout this State, which forbids the substitution of an indictment. The Mobile circuit has not uniformly followed this rule, as we learn from our brother Gibbons; but that circuit is believed to form the only exception.

By this rule of practice, the right is conceded to the prisoner to be arraigned on the indictment found by the grand jury; to have an inspection of that identical paper, in order to make his objections to its form or substance, if any exist. The rule is one which tends to make solicitors careful in drawing indictments, and clerks extremely careful of their safe custody. We doubt whether, on the whole, any good would be accomplished by overthrowing a rule which is productive of these consequences. When an indictment is lost or destroyed, it can generally be supplied by having a new one found by the grand jury,

We prefer, at all events, if evil is likely to result from the established rule of practice, to leave the legislature to provide a remedy.

It is not necessary to notice the other assignments of error. The judgment is reversed, and the cause remanded.

CHILTON, C. J.—I have looked through the books, and

have been unable to find a single case where an indictment has been substituted, and a prisoner put upon his trial on a copy. It is manifest, that in many cases of this kind, the very important preliminary inquiry would arise, what the original indictment contained; whether that which was set up as a copy, was, in fact, true; and since certainty in the ascertainment of such fact, is not attainable, it may, and doubtless would sometimes happen, that a party might be put upon trial even for his life, when in truth the grand jury had never found a bill of indictment for the offence.

In my view, the law, while it attaches no importance to the mere paper on which the indictment is written, nevertheless makes the original indictment as returned by the grand jury, the only evidence of the charge against the prisoner. It will not allow that the prisoner should be put upon his trial, upon a charge not shown by an indictment returned by the grand jury, but upon secondary proof as to what the indictment contained.

GIBBONS, J.—Being unable to concur in the conclusions of the majority of the court in the present case, I take this occasion to state briefly the grounds of my dissent.

"An indictment," says Blackstone, "is a written accusation, of one or more persons, of a crime or misdemeanor, preferred to, and presented upon oath by a grand jury." 4 Blackstone Com. 302.

According to Mr. Chitty, "an indictment is defined to be a written accusation, of one or more persons, of a crime, presented upon oath by a jury of twelve or more men, termed a grand jury." In the language of Lord Hale, it is "a plain, brief, and certain narration of an offence committed by any person, and of those necessary circumstances that concur to ascertain the fact and its nature." In general, the rules and principles of pleading with respect to the structure of a declaration, are applicable to an indictment; and, therefore, where the criminal law, as to the form of an indictment in a particular case, is silent, resort may be had to decisions on the requisites of pleading in civil actions." 1 Chitty C. L. 168.

"An indictment," says Mr. Wharton, "is a written accusation of an offence, preferred to, and presented upon oath as

50

true, by a grand jury, at the suit of the government."
Wharton's Criminal Law 60.

According to the opinion of a majority of the court, as
just delivered, an indictment seems to be considered as some-
thing more than the mere evidence of a charge or accusation,
but is in itself the charge or accusation, which can neither be
amended, nor its place supplied by secondary evidence on its
being lost; whereas, according to the views which I entertain,
the indictment is but the evidence of the accusation, forming
a part of the record of the cause; and like any other part of
the record, on proof of its loss, its contents can be proved,
and its place supplied, by secondary evidence. The court
certainly has no power to put the defendant on trial, on an in-
dictment different from that which the grand jury returned;
but if the court is satisfied that the paper proposed to be sub-
stituted is a true copy of the lost original, where is the injury
to the defendant? He is tried upon the same charge that
was preferred by the grand jury, without change or variation.
The vice of the opinion just delivered, I consider to consist
in this: that it not only makes the particular paper returned
to the court by the grand jury evidence of the accusation,
but identifies the accusation more with the paper itself, as a
material substance, than with the particular form of words
which it imports.

It is said, that the statute of jeofails or amendments does
not apply to indictments, and this is one of the reasons on
which the opinion of the court is based. On this subject Mr.
Chitty says: "It seems to be settled, both by the express ex-
ceptions in the statutes of amendments, and the current of
authorities, that indictments are not within their operations;
and they, therefore, stand upon the same principles, with re-
spect to amendment, as those to which all pleadings were sub-
ject at common law. And as the indictment is the finding of
a jury upon oath, it cannot be amended by the court, without
the concurrence of the grand inquest by whom it is presented.
To this rule, however, there is an exception, in case of indict-
ments removed from London, because, by the charters of that
city, only the substance of the record can be removed from
it, and the original remains a certain guide for the amendment;
and it is the common practice, for the grand jury to consent,

at the time they are sworn, that the court shall amend matters of form, altering no matter of substance; and mere informalities may, therefore, be amended by the court before the commencement of the trial, though it was formerly the practice to award process to the grand jury, to come into court and amend them." Chitty's Criminal Law 297. Thus, according to this authority, mere formal matters can be amended by the court, without altering any matters of substance, where the leave to that effect has been given by the grand jury, when they are sworn, or when they return the indictment.

But I do not consider the question presented in the present case as one of amendment, but rather one of substituting, or supplying a record on proof that the original is lost. The present record does not show that the court below amended, or attempted to amend, the indictment; but it does show that the court, on proof being made that the original indictment was lost, and also, that the copy proposed to be substituted was a true copy of the original, ordered the said copy to stand and be substituted for the original. Now, if the particular paper on which the charge is written, constitutes the charge or accusation, or if it forms any material part of said charge or accusation, then the court below undoubtedly erred; but, if the charge or accusation consists of the words and sentences composing the indictment, and the paper on which they are written is nothing more than the medium of transmitting the ideas thus written from the grand jury room to the court, then, I see no reason why such a paper, constituting as it does a part of the record, should not be supplied by secondary evidence, on the original being lost, as in any other case where the record is shown to be lost. It is admitted, that, in civil proceedings, the court would have ample power to supply a declaration, or any other portion of the record, on the original being shown to be lost, and the contents proved. This power the court possesses, not from any statute of amendments, but exercises it in administering a common law right, viz: in allowing secondary evidence in proof of a fact, when the original is lost. I fully agree, as is previously intimated, that the defendant has the right to stand upon the indictment found by the grand jury, nor has the court the power to put him upon trial upon any other charge; and therefore the court

should be careful not to allow any change to be made in the offence charged, in the substitution of one paper for another which is lost. But when the court is satisfied that the paper proposed to be substituted is, in fact, a true copy of the original, and when it is in fact a true copy of such original, then, the defendant is tried, according to my views, not upon a new, but upon identically the same indictment as that returned by the grand jury. True, the paper is changed; but the charge, the accusation, remains the same. It is upon this principle, that any record is supplied, on proof of its loss, by secondary evidence. The admission of the proof of a secondary character, is not the introduction of any amendment to the old record, but is simply completing the old record, so as to make it speak the truth. In a matter of as much importance as indictments, and particularly in cases of felony, courts should be extremely careful not to admit a false copy to be substituted for the original; but when the court is satisfied that the paper offered is, in fact, a true copy of the orignal, I know of no principle of law, nor any good reason in the nature of things, which forbids such true copy from taking the place of the lost original. The position taken by the majority of the court, is not that the court allowed the substitution of the copy of the indictment upon insufficient evidence of its being in fact a true copy, but it goes the full length, and holds that the original indictment being lost or destroyed, the prosecution of that indictment is ended forever. It is from this proposition that I dissent.

I understand it to be admitted, as a general rule, that lost records may be supplied by proof of the loss, and also of their contents. This, as a rule, is undeniable. *Vide* Phillips' Ev. 387, *et seq.*; also Cowen's & Hill's notes, 1066 to 1075. Why is it, then, that an indictment is to be made an exception to the general rule? I know of no reason whatever, unless it is the one assumed by the opinion just delivered, that the paper itself returned by the grand jury to the court, independent of what is written upon it, forms a material part of the accusation or charge. To this position I cannot give my assent.

Besides, this court, in the case of John, a slave, v. The State, 2 Ala. 290, denies in effect, as I understand the decision, the doctrine asserted in the opinion of the majority of

Ganaway v. The State.

the court. In that case, three persons were indicted for felony, and one of them changed the venue. The 20th rule of practice requires, on the change of venue in any case, that the original papers shall be sent, with a transcript of the orders, &c., made in the cause, to the county where such trial is to be had after the change of venue. In this case, the clerk of the court where the indictment was originally pending, sent the original papers to the county where one of the defendants had changed the venue, leaving no papers in the county where the indictment was still pending against the other defendants. The correct practice in such cases is discussed, and settled by the judge delivering the opinion; and he decides, that, in such cases, the party changing the venue is not entitled to the original papers, but must be tried upon a copy of the indictment. Here, then, is distinctly announced the proposition, that the court has the power, under the circumstances of that case, to put a defendant upon his trial upon the copy of an indictment merely, notwithstanding the original is in existence. If, under the circumstances of that case, the court, without any express legislative authority, and in direct opposition to the letter of the 20th rule of practice, could put a defendant upon his trial upon a copy merely of an indictment, why, I would ask, has not the court the power to substitute a copy of an indictment when the original is lost?' The case from 2 Ala. is cited only for the purpose of showing that the court does, under some circumstances, possess the power of substituting a copy for the original of an indictment, and of requiring the defendant to go to trial upon it. To that extent the case is undoubted authority. This is far enough for the argument in the present case, the position of the majority of the court being that the court, in no case, has the power to try a defendant upon the copy merely of an indictment.

For the reasons above stated, I cannot concur in the opinion of the court, just delivered. In my opinion, the judgment of the court below was correct, and should be affirmed.

GOLDTHWAITE, J.—I concur in the views expressed in the foregoing opinion of my brother GIBBONS.