## Case No. 15,687.

UNITED STATES v. McKEE.

[4 Dill. 1;[1] 3 Cent. Law J. 292.]

Circuit Court, E. D. Missouri. April 26, 1876.

REMISSION OF INDICTMENT FROM DISTRICT TO CIRCUIT COURT—RECORD—COPY OF INDICTMENT—ARREST OF JUDGMENT—ERRORS OF FORM.

1. The legislation of congress (Rev. St. § 1037 [9 Stat. 72]), authorizing the district court, by order entered on its minutes, to remit any indictment pending therein to the circuit court, does not require that the clerk of the district court shall transmit the original indictment, but an exemplification of the record, including a certified copy of the indictment.

[Cited in Burke v. Bunker Hill & S. Mining & Concentrating Co., 46 Fed. 650.]
[Cited in Stone v. Sargent, 129 Mass. 507.]

2. Where a record copy of the indictment was transmitted to the circuit court, to which no objection was made by the defendant, who pleaded thereto, and went to trial thereon, and was convicted, the original indictment remaining on the files of the district court, it was held that even if the original indictment, instead of a copy, should have been sent, this was waived by the defendant, and under the remedial provisions of the statute (Rev. St. § 1025 [17 Stat. 198]), the defendant, not having been prejudiced, was not entitled to have the judgment arrested.

[Cited in U. S. v. Molloy, 31 Fed. 24.]

From the transcript which has been remitted to the circuit court by the district court of the United States for the Eastern district of Missouri, it appears that at the November term, 1875, of the said district court, a grand jury found and returned an indictment against the defendant, which charged him with having conspired with certain individuals to defraud the United States of the tax on certain distilled spirits thereafter to be manufactured at designated distilleries, situated in the city of St. Louis. [See Cases Nos. 15,685 and 15,686.] On this indictment—having been arrested upon capias—the defendant was arraigned in the district court, entered his plea of not guilty, and was ad-

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

mitted to bail under recognizance taken in open court.

At the same term of the district court, on motion of the attorney of the United States, it was ordered, by a proper entry upon the minutes, that the indictment be remitted to the adjourned September term of the circuit court, which was to convene on the 4th day of January, 1876, and that the defendant appear at said adjourned term, on said day, and answer said indictment and all orders touching the same which might be made by said circuit court. The order, as entered of record in the district court and duly certified to the circuit court, is in the following words: "This day comes the United States, by the district attorney, and on the motion of said attorney, it is ordered that the indictment in this cause be and hereby is remitted to the next adjourned term and session of the circuit court of the United States in and for the Eastern district of Missouri, to be begun and holden at the city of St. Louis, in said Eastern district of Missouri, on the first Tuesday, the 4th day, of January next, A. D. 1876, for proceedings thereon according to law. And it is further ordered that the said defendant, William McKee, be and appear at and before said circuit court on the said 4th day of January next, to answer to the charges as contained in the said indictment herein against him, and obey any and all the orders that may be made by said circuit court in relation to said indictment during the pending of the same, in obedience to the recognizance heretofore entered into by him herein."

In obedience to this order, the clerk of the district court certified under seal and remitted to the circuit court, a true transcript of the record and proceedings in this case, to which was appended the following certificate: "I, Joseph H. Clark, clerk of the district court of the United States in and for the Eastern district of Missouri, do hereby certify the writings hereto annexed to be a true transcript of the indictment, capias, and return on same, and of the proceedings had in case No. 919, A. D. 1875, of the United States, plaintiff, against William McKee, defendant, as fully as the same remain on file and of record in said case, in my office." This transcript of the record was duly filed in the circuit court. At the adjourned term (January, 1876), the defendant appeared in the circuit court and withdrew the plea of not guilty, and by leave of court demurred to the indictment, and the demurrer having been overruled, he thereupon again pleaded not guilty; was tried by a jury, which returned a verdict of guilty. A motion for a new trial was made and overruled [see Case No. 15,683], and now the defendant moves in arrest of judgment and to dismiss on the ground: (1) That there is no indictment against the defendant pending in the circuit court. (2) That the circuit court has no jurisdiction of the case.

(3) That the defendant was not tried on the original indictment, but on an alleged copy thereof. The original indictment was not transmitted by the clerk of the district court to this court, but a certified copy thereof; the original indictment and original papers all the time remaining in the district court. The objection that the original indictment, and not a copy thereof, should have been remitted to the circuit court, was not made or suggested until after the trial and verdict. The order of remission was made under Rev. St. § 1037, which provides that "whenever the district attorney deems it necessary, any circuit court may, by order entered on its minutes, remit any indictment pending therein to the next session of the district court of the same district, where the offense charged in the indictment is cognizable by the said district court; and, in like manner, any district court may remit to the next session of the circuit court of the same district any indictment pending in said district court, and such remission shall carry with it all recognizances, processes, and proceedings pending in the case in the court from which the remission is made; and the court to which such remission is made shall, after the order of remission is filed therein, act in the case as if the indictment and all other proceedings in the same had been originated in said court."

David P. Dyer, U. S. Atty., and James O. Broadhead and Lucien Eaton, Special U. S. Asst. Attys.

Krum & Madill, Henry A. Clover, D. W. Voorhees, and Wm. M. Hatch, for defendant.

Before DILLON, Circuit Judge, and TREAT, District Judge.

DILLON, Circuit Judge. The objection relied on is that the circuit court acquired no jurisdiction over the defendant and the case, because under the order of the district court remitting the indictment, the original indictment was never transmitted to this court, but only a certified copy thereof. It is also contended by the defendant, that if the presence of the original indictment is not a jurisdictional requisite, yet, inasmuch as the statute contemplates that the defendant shall be tried upon the original, and not upon a copy, he has not been legally convicted, and judgment should be arrested. Both of these objections fail if the statute does not require the original indictment to be transmitted with the rest of the record and the order of remission.

When this question, which is new, and has never been decided, was first started, it occurred to us that the language of the statute (Rev. St. § 1037), viewed in connection with other statutes as to the removal of causes from state to federal courts, contemplated that the indictment, that is, the original indictment, and all recognizances, processes, and papers—in a word, the original files—should be transmitted to the court to which

the case is sent. Subsequent reflection and examination have satisfied us that the language of the section, taken altogether, shows that it was the purpose of congress to authorize the transfer from the one court to the other of a criminal case—of the whole case, and all the proceedings in the same—and this is the burden and object of the statute, and not the particular form in which the record of the one court should be sent to the other.

The case originated in the district court. The indictment and other proceedings therein were part of the records of that court. An indictment, when found by a grand jury, and presented to and received by the court, passes into and becomes a part of the records of the court. 1 Bish. Cr. Proc. (2d Ed.) § 36; State v. Gibbons, 4 N. J. Law, 40. The indictment being the original accusation of the grand jury, and a part of the records of the court to which it is presented, is always before the court, and in that court it is, perhaps (under the practice in this country), the best evidence of its existence and contents. But in other courts the practice and law are settled that the existence of an indictment and its contents may be shown by exemplification of the record of the court in which it is found, and it is not necessary, if, indeed, competent, to produce the original indictment. Porter v. Cooper, 6 Car. & P. 354; Rex v. Smith, 8 Barn. & C. 341; Bishop v. State, 30 Ala. 34; Rosc. Cr. Ev. (7th Am. Ed.) 165; Harrall v. State, 26 Ala. 52; Major v. State, 2 Sneed, 11; Vail v. Smith, 4 Cow. 71; 1 Greenl. Ev. § 502. And in England it is settled that the finding of an indictment in another court cannot be proved by the production of the original by the clerk of the court in which it is found, but it must be proved by a record regularly drawn up containing a copy of it. Rex v. Smith, 8 Barn. & C. 341; Rosc. Cr. Ev. (7th Am. Ed.) 165. In England indictments found in inferior jurisdictions may be removed, with all the proceedings thereon, at any time before trial, into the king's bench,. to have their validity determined and to prevent a partial and insufficient trial in the court below. 4 Bl. Comm. 320, 321; 1 Chit. Cr. Law, 371 et seq. The English books always speak of the "removal of the indictment" and the "delivery of the indictment" to the higher court, but in point of fact the original indictment remains in the court in which it is found, and only the record of it and the proceedings of record touching it are sent to the higher court. The removal is effected by the writ of certiorari, which issues out of the king's bench, directed to the judges or officers of the inferior court in which the indictment is pending, and commands them to certify "all and singular the said indictment," etc. 1 Chit. Cr. Law, 387. Notwithstanding the command of the writ is to certify the indictment, the writ is executed by transmitting "the record of the indictment" and the other proceedings of record

thereon—and not the original indictment (1 Chit. Cr. Law, 394; Id. 334), where it is expressly said that the "copy of the indictment" is transmitted to the superior court. In State v. Gibbons, 4 N. J. Law, 40, 44, the original indictment was sent to the supreme court, and it was held to be improper and insufficient. The chief justice observed: "When the grand jury return into court and present an indictment, an entry is made in the minutes of such presentment, stating against whom the same is, and for what crime; and then the indictment itself passes to the files of the court, there to remain until it becomes necessary to make up the record, * * * and then to be affiled among the rolls. * * * In all cases where a certiorari is presented, whether before or after plea pleaded, it is essential that the proceedings, so far as they have gone, be enrolled, and that that roll, and nothing else, be certified to the upper court."

The removal of a criminal case in England after bill of indictment found, by certiorari, from an inferior to a superior jurisdiction, for trial by jury and judgment, is quite analogous to the remission provided for by the statutes of the United States from one of its courts to the other. The English books invariably speak of the "removal of indictments" by certiorari (see Chit. Cr. Law, c. 10, p. 371), when, in fact, the removal is not of the original, but of the record duly certified, which includes a copy of the indictment. The command of the writ is to "send the indictment," which is obeyed by sending the record of the indictment. The trial is had upon the copy or record thus returned. So, when our statute provides for the remission of the indictment, it may well be construed to mean an exemplified copy or record of the indictment, to be sent with the other records pertaining to the case. It is just as important or as little important that the original bill of indictment found at the sessions should be in the king's bench for the trial of the defendant thereon by a jury as that it be in the federal court to which a criminal case has been sent by the court to which the indictment was originally presented. It is essential to the jurisdiction of the district court that the indictment should have been presented to it by a grand jury impaneled in that court, and these facts ought to appear of record therein. If that court acquired no jurisdiction before the order remitting the indictment, the circuit court could acquire none in consequence of the filing of the order of remission. Undoubtedly, all the record relating to the case remitted, including recognizances taken in open court and entered of record, and all the proceedings of record, should be transmitted to the court to which the remission is ordered, as well as the indictment. All these other facts of record must go by exemplification or certified copy, and, if so, why not in the same manner the indict-

ment and process? This is the usual way of transmitting or sending the record in a case from one court to another; and the practice contended for by the defendant of sending away the originals would compel the court in which the indictment was found to part with its records and leave them incomplete. And the books show that unless the statute requires the original papers to be sent, the practice is to send exemplifications or certified copies.

Very little aid is to be had from the decisions of the state courts construing special statutes on the subject of changes of venue in criminal cases. They all concur in holding that when the statute authorizes the trial to be had upon the record copy of the indictment instead of the original, this may be done. Harrall v. State, 26 Ala. 52; Major v. State, 2 Sneed, 11; Bishop v. State, 30 Ala. 34; Reynolds v. State, 11 Tex. 120; Ruby v. State, 7 Mo. 206; Bramlett v. State, 31 Ala. 376.

Whether the defendant may be tried or sentenced upon a copy of a lost indictment, is not a question before us, and in respect of which there may be doubt under the decisions, unless it is a copy of record. Ganaway v. State, 22 Ala. 772; Bradshaw's Case, 16 Grat. 507; Mount v. State, 14 Ohio, 295; Ruby v. State, 7 Mo. 206; 1 Bish. Cr. Proc. (2d Ed.) § 1215, and cases cited. In the case of Browning v. State, 30 Miss. 656, it was urged that the court erred in forcing the prisoner to trial on a copy of the indictment instead of the original. He was indicted in one county, and the venue was changed to another county. In a change of venue in civil cases the statute directed that the original papers be transmitted, but the statute in criminal cases made no provision on the subject. The clerk transmitted a certified copy of all the orders, etc., including a copy of the indictment, and it was held that the defendant was properly tried thereon. The court remarked that unless authority to transmit the original papers "is conferred by the legislature, it would be clearly illegal for the clerks of the circuit courts to part with the original papers or records pertaining to a prosecution therein pending. All that a clerk could do in such cases—and we must infer that it was all the legislature intended to be done—is to transmit a perfect transcript of all the original papers in the cause, the minutes or records of the court containing the orders, and proceedings of the court in relation to the same, properly certified." In Shoemaker v. State, 12 Ohio, 43, 51, the statute in terms required the "original indictment" to be transmitted when the prisoner elected to be tried in the supreme court.

Our judgment is that there is no positive requirement in the statute (Rev. St. § 1037) that the original indictment should be sent; that, like the other proceedings in the case, the indictment is part of the record of the

cause, and that it was properly certified as such to the circuit court, and that on the filing of the same, with the order of remission, that court had jurisdiction to try the defendant on the indictment and record thus certified and filed.

But suppose we are mistaken in the view that the statute authorizes or requires the copy instead of the original indictment to be sent, does it follow that the court acquired no jurisdiction? A certified copy was sent. It is not suggested that it was not a faithful copy, word for word. The defendant treated the exemplified or record copy as the indictment. He demurred to it, and afterwards went to trial upon it. He made no objection to it. If he had been acquitted, it would certainly have been severe to have applied to him the doctrine his counsel now maintain to be correct, namely: that the whole proceeding was coram non judice and void, because the court had no jurisdiction, and hence he would be liable to be again tried. It is indisputable that the defendant has suffered no prejudice in fact because he was tried upon the certified copy instead of the original. Having treated the record copy throughout as equivalent to the original, the defendant must be taken to have waived the right, if it exists, to a trial upon the original indictment, when he fails to make the objection until after verdict. The cases are numerous, particularly in modern times, and where the offense is a misdemeanor, in which rights, technical in their character, and where no prejudice has resulted, have been considered as waived. Ruby v. State, 7 Mo. 206; Major v. State, 2 Sneed, 11; Shaw v. State, 18 Ala. 547; Patterson v. U. S., 2 Wheat. [15 U. S.] 221; 1 Bish. Cr. Proc. §§ 117, 118, 125.

Inasmuch as it is not claimed that the exemplification of the indictment on which the defendant was tried is in any respect variant from the original on file in the district court, we have the means of a positive assurance that there has been, and could be, no prejudice to the defendant because the trial was upon the one instead of the other. Thus the case, in any view which can be taken of it, comes within the remedial provisions of section 1025 of the Revised Statutes: "No indictment found and presented by a grand jury in any district or circuit or other court of the United States, shall be deemed insufficient, nor shall the trial, judgment, or other proceedings thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant."

The motion in arrest and to dismiss are overruled. Motions overruled.

NOTE [from 3 Cent. Law J. 292]. After the reading of this opinion, Judge DILLON proceeded to pronounce sentence as follows: The defendant has been indicted under this section (§ 5440) of the Revised Statutes [14 Stat. 484]:

If two or more persons conspire either to commit any offence against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty of not less than $1,000 and not more than $10,000, and to imprisonment not more than two years." If the circumstances connected with this trial were not so fresh in the public mind, it would be a fitting occasion to review them briefly, in order that the views which guide the court in the punishment, which, in the exercise of its duty, it becomes necessary to pronounce as ministers of the law, might be the more fully seen. It will be observed that within certain limits the statute gives to the court a discretion as to the amount of punishment. It would have relieved both of us of a great deal of responsibility if the statute itself had fixed, and in unvarying terms defined, the amount of punishment; but the statute, doubtless for wise reasons, has fixed limits within which the discretion of the court may range and adjust, according to its own judgment and view, as best it may, the punishment which seems, under all the circumstances, the best fitted to a particular case. We have discretion to fix a pecuniary penalty to be paid in the sum of $10,000. There is a discretion also as to the place of imprisonment, the language of the statute being—"and to imprisonment not more than two years"; this particular statute not stating where—whether in the county jail or in the penitentiary of the state—that imprisonment shall be had. If we should consider only the magnitude of the alleged fraud in these cases, if we should consider that only,—for we must assume, in pronouncing judgment, that the verdict of the jury is true,—it would lead the court to pronounce the highest penalty, and the severest punishment; but when we consider that certainty, rather than severity of punishment has been shown by the history of the criminal laws and jurisprudence in all countries to conduce to the most efficient administration of criminal law; that the object of judicial sentence is not primarily, if at all, to punish the offender, except as far as this is necessary to the protection of society; that there is also a civil liability for these frauds in actions on bonds, or in an action, as at common law, to the full extent, or to the full extent of the parties' ability to respond to them as a criminal responsibility, and that these penal provisions are largely intended to aid this civil responsibility and to prevent these frauds, and become the instrument of reimbursing the government; that there is a distinction taken in the statute—and one which I may remark, also exists in reason and in the nature of things—between official offenders, and those who have occupied no official positions, broken no official oaths, and betrayed no official trusts,—these are circumstances, on the other hand, to be considered in mitigation in affixing the amount of punishment, and·they have been considered. When these cases on demurrer were before Mr. Justice Miller and Judge Treat at the last September term, in the course of his judgment in overruling the demurrer to the indictment, Justice Miller said: "All the world over, those who have a trust reposed in them are held to a more rigid accountability than others, and the violation of a trust is punished more severely when committed by them than where no such also special trust is imposed.'" In this connection it is also, but just to remember the previous good character of the defendant. In a great strait, and extremely like this, a long lifetime of usefulness and upright conduct should come largely to his aid, and with us has been a very controlling element in guiding our discretion as to the place of punishment.

I confess to another consideration which has had great weight with me, perhaps greater weight than it should have; that is, the indelible stain and stigma which attaches to imprisonment in the penitentiary, not upon the man alone, but upon his wife and children, and upon the latter after he has gone from them. It is a terrible consequence of crime that its dark shadow covers the offended, as well as the offender, and it is a terrible thought that one's children are likely to be taunted with it in after years, that their father has been in the penitentiary of the state. In felonies, among confirmed offenders, in crimes involving great turpitude, such punishment is absolutely necessary often, but in mere misdemeanors, particularly when committed for the first·time, it is to be avoided where it can be consistently with a sense of duty. I would rather have the reflection, when I lie down at night, that I had erred, if err I must, on the side of mercy, than on the side of undue severity; it will give sweeter sleep, and leave behind it better memories. Now, considering all the circumstances of this case, without further enlarging upon them, our judgment is that the defendant pay the maximum fine of $10,000, and that he be imprisoned in the county jail for the space of two years.

[The defendant exhibited a copy of his pardon with his plea. To this plea the plaintiff demurred, which demurrer was overruled by the court. See Case No. 15,688.]