## Case No. 14,134.

### TRAFTON v. NOUGUES.

[4 Sawy. 178; [1] 4 Cent. Law J. 228; 13 Pac. Law Rep. 49.]

Circuit Court, D. California. Feb. 5, 1877.

REMOVAL OF CAUSES—CASES ARISING UNDER THE CONSTITUTION AND LAWS OF THE UNITED STATES — MINING CLAIMS — PETITION — SUFFICIENCY OF.

1. Only suits involving rights depending upon a disputed construction of the constitution and laws of the United States can be transferred from the state to the national courts, under the clause "arising under the constitution and laws of the United States," of section 2 of the "act to determine the jurisdiction of the United States courts," passed March 3, 1875 (18 Stat. 470).

[Cited in Gay v. Lyons, Case No. 5,281; Murray v. Bluebird Min. Co., 45 Fed. 386; Southern Pac. R. Co. v. Whittaker, 47 Fed. 530; Butler v. Shafer, 67 Fed. 163.]

2. Where the only questions to be litigated in suits to determine the right to mining claims are, as to what are the local laws, rules, regulations and customs by which the rights of the parties are governed, and whether the parties have in fact conformed to such local laws and customs, the courts of the United States have no jurisdiction of the cases under the provisions of the act giving jurisdiction in suits "arising under the constitution and laws of the United States."

[Cited in Re Helena & L. Smelting & Reduction Co., 48 Fed. 611.]

---

[2] [From 14 N. B. R. 507.]

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

3. A petition for the transfer of a suit from a state to a national court, on the ground that it arises under the constitution and laws of the United States, must state the facts and indicate the questions arising therein which are claimed to give the national court jurisdiction, so that the court can determine for itself from the facts the question of jurisdiction.

[Cited in Woolridge v. M'Kenna, 8 Fed. 677; McFadden v. Robinson, 22 Fed. 12; Hambleton v. Duham, Id. 465; Theurkauf v. Ireland, 27 Fed. 770; Austin v. Gagan, 39 Fed. 626; Strasburger v. Beecher, 44 Fed. 214; Fitzgerald v. Missouri Pac. Ry. Co., 45 Fed. 819; Burke v. Bunker Hill & S. Mining & Concentrating Co., 46 Fed. 648; Los Angeles Farming & Milling Co. v. Hoff, 48 Fed. 341.]

[Cited in Forncrook Manuf'g Co. v. Barnum Wire Works, 54 Mich. 555, 20 N. W. 582.]

4. A petition which only states the opinion, or conclusion of the petitioner, that the case arises under the constitution and laws of the United States, is insufficient, and a suit transferred on such petition will be remanded.

[Cited in Bluebird Min. Co. v. Largey, 49 Fed. 291.]

[This was a suit brought by Charles Trafton in the state court of Placer county to recover for trespass upon a placer gold mining claim, and seeking an injunction restraining the working of the same by defendant, P. T. Nougues. Removed to the circuit court upon defendant's petition.] Motion to remand case to the state court, whence it came, on the ground that it does not appear from the facts alleged, either in the pleadings, or the petition asking a transfer, that the case is one arising under the constitution or laws of the United States, within the meaning of the act of congress of March 3, 1875.

C. A. Tuttle, for the motion.

M. Mulany, contra.

SAWYER, Circuit Judge. I have had no little difficulty in satisfactorily construing this act. In the broad sense claimed by some, nearly all cases relating to title to lands would be swept into the national courts; for in the new states, in every action of ejectment involving a question as to the real title, one party or the other goes back to a patent, or other grant under the laws of the United States. Since the passage of the act of congress of 1866, and subsequent acts upon the same subject, expressly declaring the public lands to be free and open to exploration and occupation for mining purposes, subject to the local laws, regulations and customs of miners; also, authorizing a sale and patent to parties establishing a right under such local laws, regulations and customs, it seems to be claimed, on this broad principle, that all suits relating to disputes about mining claims may be transferred to the national courts. But, clearly, the great majority of such cases only involve a litigation of precisely the same questions as were litigated in those classes of cases for the many years since the acquisition of California prior to the passage of those acts of congress; and they turn upon no disputed construction of the constitution or statutes

of the United States. In fact, where a patent is authorized to be issued to the possessor under these acts in a contested case, the statute refers the parties to the ordinary tribunals of the country to determine, under the local laws and customs, irrespective of the acts of congress, which party is entitled to the mining claim, and the patent issues to the party so determined to have the right. Four Hundred and Twenty Min. Co. v. Bullion Min. Co. [Case No. 4,989]. Thus the rights of the parties are determined by the laws, regulations and customs of the locality outside the acts of congress, without any discussion or controversy as to the construction of those acts. Since some of this class of cases transferred to this court were retained, but with no little hesitation, the supreme court of the United States has decided several cases, which afford a rule for the future, and which, it seems to me, exclude jurisdiction in many cases which the bar appears to have supposed could be transferred. The case of McStay v. Friedman, 92 U. S. 723, was a case in which one of the parties relied: 1. On the statute of limitations; 2. On title acquired through the city of San Francisco, under the well known Van Ness ordinance, and the act of the legislature confirming it. On a writ of error to the state court, it was sought to sustain jurisdiction of the United States supreme court, on the ground that the title derived through the city depended upon the act of congress of 1866 (14 Stat. 4), granting the land to the city, in trust for those who held under the ordinance of the city, state statutes, etc. The court says: "At the trial no question was raised as to the validity or operative effect of the act of congress. * * * The city title was not drawn in question. The real controversy was as to the transfer of that title to the plaintiffs in error, and this did not depend upon the constitution or any treaty, statute of, or commission held, or authority exercised under the United States." Romie v. Casanova, 91 U. S. 380, is a similar case. At the present term of the supreme court, in a case which was actually transferred from the state court to this court, under section 2 of the act of 1875, the same ruling was made. One party claimed certain lots in San Francisco, by virtue of possession, in pursuance of the provisions of the Van Ness ordinance and the statutes of the state, and of the United States, confirming said title; while the city claimed the same as being part of the public squares reserved and set apart for public purposes in pursuance of the same ordinances and statutes. After the transfer a demurrer was interposed to the jurisdiction of this court, on the ground that it presented no question arising under the act of congress, the rights of the parties depending upon the construction of the ordinances of the city and the state statutes alone. On the other hand, it was earnestly urged that it was necessary to construe the

act of congress in order to find out who the beneficial grantee intended by the act of congress was. The court, however, held that the act of congress referred the question as to who was entitled to the land to the city ordinances and the statutes of the state upon the subject, and that their rights must be determined by a construction of those ordinances and statutes. The supreme court affirmed this ruling at the present term, thus holding that the same principle adopted in relation to the section providing for writs of error to the state courts, is, also, applicable to cases of transfer from the state to the national courts, under section 2 of the act of 1875; that is to say, that unless there is some contest as to the construction of the act of congress, there is no jurisdictional question in the case. Hoadley v. San Francisco, 94 U. S. 4.

So with reference to mining claims. The act of congress grants certain rights to those who discover, take up and work mining claims. But it refers the parties to the local laws of the states and territories, and to the rules, regulations and customs of miners of the district where the mines are situated, for the measure of their rights. If a dispute arises, as in the cases referred to, the act of congress refers the parties to the ordinary tribunals to determine it by the local laws and customs, and not by the act of congress. Upon the trial of the right to a mining claim, precisely the same questions are tried, and they are determined by the same laws and customs that were invoked as the measure of the rights of the parties before the act of congress had been passed. Clearly, the great mass of these cases cannot involve the discussion or any dispute as to the construction of any act of congress; and when they do not, under the decisions cited, this court is without jurisdiction, so far as this provision of the act is concerned. Where the controversy is upon matters other than the construction of the constitution or an act of congress, the "correct decision" of such controversy cannot possibly "depend upon the right construction of either." No controversy can possibly arise upon the construction of an act of congress, where all parties agree as to its construction. There may be a contest as to other matters, but not as to the construction of the constitution or laws in such cases.

This action was brought in the state court in Placer county, to recover for trespass upon a gravel gold mining claim, and seeking an injunction restraining the working of the claim by defendant. There is no fact alleged, either in the complaint or the petition for transfer, indicating that there is any question involved other than those that usually arise in a trial of a right to a mining claim. And it affirmatively appears from the issues stated in the petition that such are in fact the questions to be tried. It is alleged generally in the petition, it is true, that defend-

ant located and held his claim under the several acts of congress relating to the subject. But this is no more than can be said, in a general sense, of all mining claims since the passage of the several acts referred to. But as we have seen, that does not, necessarily, nor even ordinarily, in this class of cases, involve any question of disputed construction of the act, or any right or question which is not to be determined by the local laws, rules and customs, without reference to the acts of congress, precisely as they were before there was any such act in existence.

The only other allegation is, that the "right to said mining ground by plaintiff depends upon the laws of congress, and the right or title of defendant to said mining ground, aforesaid, must also be determined by the acts of congress, under which defendant and petitioner claims title; and that the rights of the plaintiff as against defendant must be determined under the laws of congress of the United States." This is in substance two or three times repeated; but it is only the statement of a legal conclusion rather than a fact; and a conclusion manifestly founded upon the general idea that all mining claims are so held; that an action relating thereto involving the rights of the parties to the mine necessarily arises under the acts of congress within the meaning of the act giving jurisdiction to the national courts—an erroneous conclusion, if I am right, in the views before expressed. These allegations express merely the opinion of the petitioner that a jurisdictional question will arise. In my judgment, such averments are insufficient to justify a transfer, or retaining the case when brought here. The precise facts should be stated out of which it is supposed the jurisdictional question will arise: and how it will arise, should be pointed out, so that the court can determine for itself whether the case is a proper one for consideration in the national courts. Otherwise the administration of justice will be greatly obstructed, and intolerable inconveniences be the result. Under the fifth section of the act, it is made the imperative duty of the court, at any stage of the proceedings, when it appears that "such suit does not really and substantially involve a dispute or controversy properly within its jurisdiction," to stop the proceeding and remand the case. Where a suit presents no disputed construction of an act of congress; where there is no contest at all as to what the act means, or what rights it gives; where the only questions are as to what are the local mining laws, rules and customs, and as to whether the parties have in fact performed the acts required by such local laws, rules and customs, how can it be said, in any just sense, that such a suit "really and substantially involves a dispute or controversy" arising under an act of congress? The location of the mine involved in the case is more than one hundred and fifty miles from San Francisco, where the court is held, and many oth-

er cases may arise in this state, Nevada and Oregon, in regard to claims lying from three to five hundred miles distant from the place where the national courts are held, and between which places the means of communication are by no means easy or cheap. Generally, in this class of cases, the testimony rests mainly in parol, and there is a multitude of witnesses. The expense of prosecuting or defending such suits at a great distance from the mines would be enormous. If the court should accept a petition containing a bare statement of the opinion of the petitioner, that the rights of the parties are derived under an act of congress, as in this case, the result in most cases would be that the court would not be able to determine whether the case "really and substantially involves a dispute or controversy properly within the jurisdiction of the court," until the close of the testimony, when it would be necessary to remand the case at last. Such results would largely obstruct the due administration of justice, and work an intolerable inconvenience to honest suitors. Besides, it would encourage transfers of cases over which the court has no jurisdiction, by unscrupulous parties for the very purpose of deterring the adverse party from pursuing his rights by reason of the delays, inconvenience and enormous expense of prosecuting an action of this class at a great distance from home. These difficulties would be especially onerous in cases relating to mining rights, where time is often as important as the right in the several large states of the Pacific coast and interior of the continent, and where a court is held at but one point. A single state, in some instances, it must not be forgotten, contains more territory than all the middle and New England states together.

In view of these, in my judgment, weighty considerations, therefore, I think it of the highest importance to the rights of honest litigants, and to the due and speedy administration of justice, that a petition for transfer should state the exact facts, and distinctly point out what the question is, and how and where it will arise, which gives jurisdiction to the court, so that the court can determine for itself, from the facts, whether the suit does really and substantially involve a dispute or controversy within its jurisdiction.

Whenever, therefore, the record fails to distinctly show such facts in a case transferred to this court, it will be returned to the state court, and under the authority given by section 5, at the cost of the party transferring it. If I am wrong in my construction of the act, and the recent decisions of the supreme court, the statute (section 5) happily affords a speedy remedy by writ of error, upon which this decision and the order remanding the case may be reviewed without waiting for a trial, and the question may as well be set at rest in this case as in any other. It is of the utmost importance that a final decision

of the question be had as soon as possible. If counsel so desire, I will order the clerk to delay returning the case till they have an opportunity to sue out and perfect a writ of error.

Let an order be entered returning the case to the state court whence it came, with costs against the party at whose instance it was brought here.