BURKE *et al.* v. BUNKER HILL & S. MINING & CONCENTRATING Co.

*(Circuit Court, D. Idaho.  June 18, 1891.)*

1. NATIONAL JURISDICTION—MINING CLAIMS.
    A suit brought in support of an adverse claim, in pursuance of the requirements of section 2326, Rev. St. U. S., as amended in March 1881, (1 Sup. Rev. St. 609) is for that reason a suit arising under the laws of the United States, within the meaning of the statute giving jurisdiction on that ground, irrespective of the character of the question involved in the litigation.

2. SAME.
    Such an action has for one of its objects the determination as to whether either party has divested the United States of the possessory title to the premises in controversy. It is not only intended to determine the rights of the two parties as between themselves, but also as between each of the parties and the United States; thereby making the United States substantially, though not formally, a party to the suit, and entitled to have their rights determined in the national courts. On that ground the United States are entitled to have their rights determined in the national courts.

3. SAME.
    Such cases are not within the decision of *Trafton* v. *Nougues,* 4 Sawy. 178, and *Water Co.* v. *Keyes,* 96 U. S. 199.

4. ADMISSION OF IDAHO—TRANSFER OF CAUSES.
    Where an action was commenced in territorial courts before admission, it was not necessary to state jurisdictional facts sufficient to give jurisdiction to this court; and such facts may be stated in request for transfer or by affidavit. Such request,

like the petition in a removal case, becomes, upon filing and transfer thereafter, a part of the record, for the purpose of determining the question of jurisdiction. It is sufficient when the jurisdictional facts appear in the request for transfer, even though not set up in the pleadings.

**5. SAME.**

When such request is filed in the state court, that court should transmit the papers to the circuit court, and, upon filing such request, the jurisdiction of the state court ceases.

**6. SAME.**

National courts cannot compel state courts to transmit original papers, but, when a state court refuses so to do, may proceed upon certified transcripts.

*(Syllabus by the Court.)*

At Law.

*W. B. Heyburn,* for plaintiffs.

*Wm. H. Claggett, F. Ganahl,* and *J. R. McBride,* for defendants.

Before SAWYER, Circuit Judge, and BEATTY, District Judge.

SAWYER, J. This is a suit brought in the territorial district court, before the admission of Idaho into the Union as a state, where it was still pending at the date of admission. It was brought in pursuance of the provisions of section 2326, Rev. St., to determine the adverse claims of the parties to a mining claim, for which defendant had made application for a patent under section 2325. After the admission of Idaho as a state, the plaintiff, in pursuance of the provisions of section 18 of the act of admission, filed a request in the state court, which had acquired possession of the records, based upon an affidavit showing what is claimed to be the necessary jurisdictional facts for a transfer of the case to the United States circuit court for the district of Idaho. Among other things, it is alleged, as follows, in the affidavit forming a part of the request, and upon which it is in part based:

"That plaintiffs claim to be the owners of the Mammoth Mining Claim by virtue of a valid location of the same under the provisions of chapter 6, tit. 32, of the Revised Statutes of the United States, and claim to have posted a notice of location at the point of discovery and recorded a substantial copy of said notice in the office of the recorder of Shoshone county, but do not claim to have recorded said notice in the office of the local recorder of the Yreka mining district, in which the claim is situated. The legislature of Idaho territory prior to said law enacted a law requiring the notice to be so recorded in said local mining district, which the defendant will maintain on the trial was a mandatory law, and that a failure to comply with its provisions rendered the record and location of plaintiff void, while plaintiffs will maintain that the said act if mandatory is in conflict with the section 2324 of the Revised Statutes of the United States and a failure to comply with its terms would not affect the validity of plaintiffs' title. That the defendants will insist on said trial that the location of plaintiffs' claim to be valid as against the defendants must be made in strict conformity with the statutes of Idaho territory, and plaintiffs will contend that said statutes are in conflict with the provisions of said chapter 6, tit. 32, of the Revised Statutes of the United States. Plaintiffs will also introduce at the trial of said cause the notice of location as the same was recorded in the said county recorder's office which plaintiffs will maintain is in compliance with the said acts of congress. Defendants contend that said notice of location is not in compliance with said act of congress. Plaintiffs will also offer evidence of the marking of their said claim on the ground so that its boundaries could be readily traced. Defendants will contend that the claim

was not so marked because the posts marking the same were not placed within the limits of the claim as allowed by law, and that the claim was staked in excess of the length allowed by law, and therefore void, while plaintiffs will admit the fact that the claim was staked in excess of the size allowed by law, but contend that under the act of congress of May 10, 1872, under which plaintiffs claim, the claim was not rendered void thereby but only void as to the excess."

Upon filing the request and affidavit, plaintiffs made application to the state district court, which then had the custody of the records, for an order directing the clerk to transmit all papers, pleadings, files, etc., in said court to the circuit court of the United States, which application the court denied. Whereupon the plaintiffs procured a certified transcript of the record, and filed it in this court.

The plaintiffs now move for an order of this court, commanding the said district court, and the clerk thereof, to forthwith transmit to this court all papers, pleadings, and files in said cause in said district court. And the defendant makes a counter-motion to strike from the records of this court the transcript of the record of said case filed herein, on the ground that the original pleadings, files and proceedings are to be transmitted, and that they only can constitute, or furnish a record upon which this court can act—a transcript thereof being insufficient, under the laws to authorize any judicial action in the case in this court.

Objections by defendant are made that the pleadings and affidavit forming part of the request, on various grounds do not show a case over which this court has jurisdiction. The value of the mine is not alleged, as would have been better, but we think upon the whole, that the allegation in the complaint that plaintiff has sustained by the action of the defendant in depreciating the value of the mine, damages to the amount of $10,000, and a claim for a judgment for that amount, shows a case for jurisdiction, so far as the amount in controversy is concerned. It is claimed on one side and denied on the other, that this suit having been brought to determine the title to a mining claim in pursuance to the requirements of section 2326 of the Revised Statutes, as amended in March, 1881, (1 Supp. Rev. St. 609,) is, for that reason, a suit arising under the laws of the United States, within the meaning of the statute giving jurisdiction on that ground, irrespective of the character of the questions involved in the litigation. It seems to us, that all the authorities, as they now stand, have determined the question in favor of the affirmative of this proposition. Thus the point was directly decided on the circuit on a motion to remand, this being the only point on the motion, by Mr. Justice MILLER of the supreme court, in *Frank G. & S. M. Co.* v. *Larimer M. & S. Co.*, 8 Fed. Rep. 724. A like decision was made by Justice BREWER, then circuit judge, in *Cheesman* v. *Shreeve*, 37 Fed. Rep. 36. So the same ruling was made by KNOWLES, J., in *Strasburger* v. *Beecher*, 44 Fed. Rep. 213. Says the judge:

"As to this suit, I am clearly of the opinion that it is one which arises under the laws of the United States. It is a suit instituted in pursuance of the provisions of section 2326 of the Revised Statutes of the United States. See *Frank G. & S. M. Co.* v. *Larimer M. & S. Co.*, 8 Fed. Rep. 724. One of the

objects of such an action is to determine who is entitled to a patent to the premises in dispute. The judgment is filed in the United States land-office on the determination of the action. To some extent the United States is a party to the action. See *Jackson* v. *Roby,* 109 U. S. 440, 3 Sup. St. Rep. 301. This decision must be based upon the theory, it appears to me, that the action, pursuant to an adverse claim, has for one of its objects the determination as to whether either party has divested the United States of the possessory title to the premises in dispute."

That is to say, it is not only intended to determine the rights of the two parties as *between themselves, but also as between each of the parties and the United States, so as to determine* finally whether *either* party has so far performed the conditions prescribed by the statute as to entitle him to pay for the mine and receive a patent from the United States, *thereby making the United States, substantially, though not formally,* a party to the suit, *and entitled to have their rights determined in the national courts.* This idea is supported by the amendment to section 2326 of 1881, (1 Supp. Rev. St. 609,) which provides as follows:

"That if, in any action brought pursuant to section twenty-three hundred and twenty-six of the Revised Statutes, title to the ground in controversy *shall not be established by either party*; *the jury shall so find, and judgment shall be entered according to the verdict.* In such cases costs shall not be allowed to either party, and the claimant shall not proceed in the land-office or be entitled to a patent for *the ground in controversy until he shall have perfected his title.*"

It would seem that, under section 2326, as it originally stood, when a party applied for a patent to a mine, and there was an adverse claimant, the parties were referred to the ordinary courts to determine in the usual actions, applicable to the cases, the rights of the adverse claimant only as between themselves; such as an action to recover possession when out of possession and a suit to determine an adverse claim when in possession; the question between the successful party and the government being left to the determination of the commissioner of the land-office. But the amendment seems designed to change the whole proceedings, and refer, not only the question of the rights of the parties as between themselves, but also, without making the United States formally a party, to transfer the whole matter, as between the United States and the successful party to the courts, thereby making the United States, substantially, though not formally, parties to the suit; and on that ground, it would seem, that the United States are entitled to have their rights determined in the national courts. *Jackson* v. *Roby,* 109 U. S. 444, 3 Sup. Ct. Rep. 301, and *Wolverton* v. *Nochols,* 119 U. S. 485, 7 Sup. Ct. Rep. 289, seem to support the idea, also, that not only the rights of the parties, as between themselves, but, also, the rights, as between the parties, respectively, and the United States, are to be, conclusively determined. These rulings cited from the Federal Reporter appear to be sustained by the supreme court of the United States in *Chambers* v. *Harrington,* 111 U. S. 350, 4 Sup. Ct. Rep. 428, where the supreme court entertained an appeal, apparently, because it was an action brought under section 2326, Rev. St. See, also, *Doe* v. *Mining Co.,* 43 Fed. Rep. 219. What-

ever we might think, were this a case of first impression, arising under section 2326 *before its amendment*, we do not feel at liberty now, to question the ruling of so many cases decided by eminent judges, and by the United States supreme court, as we understand their decisions. We, therefore, hold upon these authorities that the record shows a case for national jurisdiction, as arising under the laws of the United States for the reason, that it was brought in pursuance of the requirements of section 2326, as amended, and therefore, it is not within the decisions of *Trafton* v. *Nougues*, 4 Sawy. 178, and *Water Co.* v. *Keyes*, 96 U. S. 199, and cases following those decisions. These jurisdictional facts all appear in the pleadings, and are not required to be otherwise shown in the request, or petition, to transfer to this court.

We are, also, of the opinion that the affidavit upon which the request to transfer was in part based, as quoted in the statement, presents at least two, if not three points of a disputed construction of a statute of the United States which brings the case within the principles announced in the decisions in *Trafton* v. *Nougues*, and *Water Co.* v. *Keyes*, unless one of them has, already, been finally disposed of by the supreme court, in such sense, that it is not open to further discussion; and that the petition is sufficient in this respect, also on that ground to show jurisdiction.

It is insisted that, this being a case of succession, under the act of admission, and not a case of removal, under the removal act, the jurisdictional facts should all appear in the pleadings, and cannot be shown by affidavits filed with, and as a part of, the petition, or request for transfer; and, that, if the pleadings do not state such facts, they should be amended before request made. As we have seen also, sufficient jurisdictional facts do, in this case, appear in the pleadings. But upon careful consideration, we are satisfied, that, where they do not appear in the pleadings, they can be set out in the petition, or request, to transfer. When the suits were instituted, it was not necessary to set out, in the pleadings, the facts necessary to give the national courts, as distinguished from the state courts, jurisdiction. Consequently, in many cases, the pleadings filed in the territorial courts would not be likely to state those facts. The cases pass to their successors, as they are, at the time of the admission, or upon the organization of the successors of the territorial courts, immediately after admission. Under the removal acts, it has always, been held, that, when the jurisdictional facts necessary to a removal do not appear in the record, they may be set up in the petition; and, that, the petition constitutes a part of the record to be consulted upon the raising of any jurisdictional question in the court to which the case is removed. Now although this is a case of succession and not removal, under the acts construed, the case is, strictly, analogous; and we can perceive no good reason for making any distinction between the two classes of cases in this respect. The request in this case, like the petition in a removal case, becomes upon the filing and transfer, thereafter, a part of the record for the purpose of determining the question of jurisdiction. We think it sufficient, when the jurisdictional facts appear in the request for a transfer, even though not set up in the pleadings.

We are of the opinion, therefore, that this is a proper case under the admission act to be transferred to the United States circuit court for the district of Idaho; that the record, in the state court both with the request, and without it, presented sufficient facts to give the national courts jurisdiction; that upon the filing of the request in the state court, that court ought to have transmitted the papers to the circuit court of the United States, and that upon the filing of the request the jurisdiction of the state court over the case ceased, and no longer existed.

The next question, is, whether the original papers and files, or a complete certified transcript of the record, should have been transmitted; and if the originals are not transmitted would a complete certified transcript, when filed in the circuit court, constitute such a record, as would authorize the court to assume jurisdiction, and proceed with the case? The language of the statute, is, "All files, records, indictments and proceedings relating to any such cases shall be transferred to such circuit, district and state courts, respectively, and the same shall be proceeded with therein in due course of law." That language seems to be plain, and not open to construction. The originals are, evidently, contemplated. "All the files, records, indictments and proceedings," etc., *not transcripts* of such documents. The court is a successor to the prior court, and the prior court goes out of existence. The successor should succeed as custodian of the existing records. There is no other place indicated for them. What else can be done with them? If the court takes up the case at the point where it finds it, and proceeds "therein in due course of law," it is the appropriate, and only appropriate, custodian; and as we think, was intended to succeed to the possession and control of the original "files, records, indictments and proceedings." This however, as to some parts of the record, would involve a practical difficulty, if not impossibility. The journals, minute books, judgment books, etc., would, doubtless, contain entries, indiscriminately, in both classes of cases—those that go to the state, and those that go to the national courts. Obviously, both courts could not have the custody of these parts of the records. From the necessity of the case, but one could have them. So all cases go to the state courts, *unless a request be made* to transfer them to the national courts, and as a great majority of the cases would go to the state courts, obviously, also the books and records of this kind, should go to the state courts, and transcripts from those books, only, of such recorded proceedings, could be furnished to the national courts in connection with the original separate files of papers, and indictments in any case transferred upon request. As to such portions of the record, we think a certified transcript would afford a legal record upon which the national courts would be authorized to act. But the state court, having possession of the records, files, papers, etc., in this case, refuses to transmit them in pursuance of the request made, and as required by law; and we are asked to make an order requiring the state court, and its clerk to transmit them as the law requires, and as they should do. But the statute gives us no such authority. We are not referred to any law which would justify us making any such or-

der, or authorizing us to enforce an order if made. We have certainly no controlling, or supervising, power over the state courts, or their clerks, and not even any appellate jurisdiction over them. The state and circuit and district courts of the United States, are courts of co-ordinate jurisdiction, only, upon some matters; but having no relations to, or with each other. They are courts of different sovereignties, each acting upon their own views of their powers and duties, and neither subject to interference from the other. We know of no means by which we can compel the state courts to send the records which belong under the law to this court; and such an order would be merely *brutum fulmen;* and a *certiorari,* only goes from a superior to an inferior court. The application for the order asked, must therefore, be denied. We have no doubt, however, that upon a proper request made in a proper case, the jurisdiction of the state court ceases, and if it proceeds with the case, its action will be set aside, as utterly void, by the supreme court of the United States on appeal, as has been done in analogous cases under the removal acts, where the state courts have refused to order a removal, and proceeded with the case. What, then, is to be done, when in a proper case, upon a proper request, the state court refuses to transmit the files, and records in the case, to the national courts? In such a case, we have no doubt, that the jurisdiction of the state court ceases, and that of the national court attaches, upon the filing of the request; but the latter court has no record upon which it can proceed to act. In such case, we think, the national court, would be fully justified in proceeding upon a complete certified transcript of the record from the state court. It could order the transcript to be accepted, and taken as the record in the case, as a substitute for the original papers. Courts have proceeded to act upon a certified transcript of an indictment, even where an indictment was ordered to be transferred for trial from the national court wherein it was found, to another national court. Thus, in *U. S.* v. *McKee,* 4 Dill. 1, where it was ordered in pursuance of the statute "that the indictment be remitted to the adjourned September term of the circuit court" it was held that the transmission of a certified transcript of the indictment, was a compliance with the order. Numerous authorities are cited upon the point.

We think, therefore, that where the state court in a proper case, and upon a proper request, refuses to transmit the original files to the national court, in which it belongs, the latter court is fully empowered to adopt, and justified in adopting, a complete certified transcript of the record in the case, as its record; and in proceeding thereon with the case. There is nothing in the act of admission prohibiting such a course, and it seems in such case to be the only mode by which the circuit court can take and exercise the jurisdiction conferred on it. We would suggest that the better mode of proceeding in such case, would be to procure a proper complete transcript of the record in the state court, make a showing of the refusal of the state court to transmit the original record, and move the court for leave to file the transcript, and to adopt it as the record, thus far, in the case. This is the only case submitted, and

we have covered all the points argued and submitted, as we understand them. In the brief of plaintiff we are asked to permit a supplemental bill to be filed. We find in the record a motion to file it. But we did not understand, at the hearing, that this motion was submitted. At all events, the proposed bill is not on file, and since we do not know its contents, we cannot determine upon the propriety of allowing it to be filed, as the matter now stands. We do not therefore, pass upon that question but leave it, with leave to renew the motion upon filing as a part of the moving papers the proposed supplemental and amended bill.

Upon these views, the motion of plaintiffs for an order upon the state court, to transmit the record, and of the defendant to strike the transcript from the record, must be denied, and it is so ordered.