RUTTER et al. v. SHOSHONE MIN. CO.

(Circuit Court, D. Idaho. June 22, 1896.)

1. JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION.
   A suit brought in pursuance of Rev. St. § 2326, and based upon an adverse claim made upon the filing of an application for a patent for mining ground, is a suit arising under the laws of the United States. Burke v. Concentrating Co., 46 Fed. 644, followed. Bushnell v. Smelting Co., 13 Sup. Ct. 771, 148 U. S. 682, distinguished.

2. EQUITABLE AND LEGAL SUITS—ADVERSE CLAIM TO MINING LAND.
   Suits brought in pursuance of Rev. St. § 2326, to settle adverse claims to mining ground, are in their nature equitable, and not legal, actions. Doe v. Mining Co., 43 Fed. 219, followed.

This was a suit by Royal J. Rutter and F. W. Bradley against the Shoshone Mining Company to determine an adverse claim to mining land. The cause was heard upon demurrer to the complaint.

John R. McBride, for complainants.
W. B. Heybrun, for defendant.

BEATTY, District Judge. This action is in pursuance of section 2326, Rev. St., and is based upon an adverse claim by complainant to the application of defendant for patent to mining ground. All except two of the several causes of demurrer to the original complaint are cured by the amended complaint, which complainants are permitted to file. In the remaining causes are involved the questions (1) whether such suits arise under the laws of the United States, and (2) whether they are at law or in equity.

It seems settled by the authority of several circuit court decisions that such cases are within the jurisdiction of the United States courts. In the last case upon the subject, Burke v. Concentrating Co., 46 Fed. 644, the question was directly raised, and was fully considered and decided by Judge Sawyer. Defendant now cites Bushnell v. Smelting Co., 148 U. S. 682, 13 Sup. Ct. 771, as holding a contrary view. While this was a suit of the nature provided for by section 2326, it was commenced and tried in the state court, where the only question for decision was as to the course of a ledge. The first attempt to suggest a federal question was by a petition in the state supreme court for rehearing, and the United States supreme court says this was too late to be considered, even if a federal question were involved in the case. It also says that the question turned largely upon the construction of a state statute prescribing the width of mining locations. While there is some intimation only, not a declaration, that the pleader must specially plead some facts showing that a federal question is involved, the decision seems to rest solely upon the procedure had in the state court, which was for the settling of a single fact that in no way involved the construction of any United States statute. If it does overrule the doctrine of 46 Fed. 644, it does not do so with such directness as will justify this court in now departing from the prior

clear holding of other courts, and by some eminent judges. Therefore that cause of demurrer is overruled.

The remaining question, as one of practice, is important, and seems never to have been directly considered by the supreme court, but has been by a few other courts, whose decisions have been contrary. The statute (section 2326, ante) directs that, when a party enters in a local land office his adverse claim to an application for patent to mining ground, he shall commence his proceedings in some court of competent jurisdiction to determine the question of "the right of possession" to the ground in dispute, and according to the judgment of such court the rights of the parties are finally determined in the land office. By the act of March 3, 1881, this section is so amended that, if neither party shows title to the ground in controversy, neither will have judgment in his favor. So far as the court is concerned, it is a special proceeding, referred to its determination for the guidance of the land office, and the jurisdiction of the court in such cases is based upon prior proceedings in such office. In questions of title and patent for agricultural and other lands, similar matters are determined by the local land office. So they might be in mineral entries had congress so determined. The questions for consideration are such as may, if congress had so directed, be adjudicated without the aid of a jury. There is nothing in the nature of the questions involved that entitles any of the parties to a jury trial, within the intent of the seventh constitutional amendment, for the whole proceeding, and every part thereof, is nothing more than a procedure established by the government for the disposal of its lands, and certainly it cannot be claimed that the purchaser can demand a trial by jury to determine his claim to government lands. In all such contests it must be remembered that the government is an interested party, so far as to see that the claimants have complied with the mining requirements before they get any title to the lands. The statutes and some decisions say that this action is to determine "the right of possession" to the ground in controversy. If this were all, it might be determined by ejectment; but it is submitted that this is not all, and that the use of this expression in the statute is an inadvertence or an inaccuracy, for the entire import and object of the statute is to have determined the more important question as to who, if any one, is entitled to the patent. Frequently a party has a right to the possession and not to the patent. He is entitled to the possession as soon as he duly locates a claim, but not to a patent until he shall have done the necessary work.

This action, then, is to find who is entitled to the conveyance from the government,—from the trustee,—for the land in controversy. Actions for conveyance of realty are essentially equitable. Again, whatever claim either party may have to the ground in controversy is based upon an equitable title alone, while the legal title remains in the government. Common-law actions deal with legal, and not equitable, titles. Judge Ross, in Doe v. Mining Co., 43 Fed. 219, held such actions equitable, for which he assigns cogent reasons that need not be repeated here. Hammer v. Milling Co., 130

U. S. 291, 9 Sup. Ct. 548, was an action like the one under consider-ation, and was tried in the Montana territorial court by a jury. On page 295, 130 U. S., and page 550, 9 Sup. Ct., it is said: "As seen by this statement, the suit is brought for special relief, and the judgment entered is such as a court exercising jurisdiction in equity alone could render." And on page 296, 130 U. S., and page 550, 9 Sup. Ct.: "The court might, therefore, have heard this case and disposed of the issue without the intervention of a jury."

It is true that this particular question, so far as can be gathered from the case, was not directly discussed. Judge Ross, however, when the case of Doe v. Mining Co. came before him, at a time sub-sequent to his decision above cited, called attention to this su-preme court case as a full justification of his ruling, to which he adhered, as appears by the printed report of counsel's argument in the cause now in my possession. Many cases of this nature have gone to the supreme court, some of which were tried in the lower courts by juries and others by the courts themselves, but in none is the question directly decided. While there are a few adverse state and territorial decisions, time will not be taken to review them.

Attention had been called to an act of congress of March 3, 1881, supra, in which the title refers to "suits at law," and the act itself says that "the jury shall so find," etc.; from which it is argued that congress intended to declare these legal actions. It may well be doubted that congress, by this indirect language, intended to define the forum in which such actions should be tried, or that, if the action provided for by section 2326 is equitable, this changed it to a legal one.

From the foregoing considerations, it is concluded such actions are equitable, and the demurrer is overruled.