SHOSHONE MIN. CO. v. RUTTER et al.

(Circuit Court of Appeals, Ninth Circuit. May 23, 1898.)

No. 413.

1. ADVERSE CLAIMS TO MINING LAND—JURISDICTION—FEDERAL QUESTION.
A suit brought in pursuance of Rev. St. § 2326, based upon an adverse claim made upon the filing of an application for a patent for mining ground, is a suit arising under the laws of the United States, and is within the jurisdiction of the circuit court. 75 Fed. 37, affirmed.

2. SAME—EQUITABLE OR LEGAL ACTIONS.
Suits brought in pursuance of Rev. St. § 2326, to determine adverse claims to mining ground, are in their nature equitable, and not legal, actions. 75 Fed. 37, affirmed.

3. RELOCATION OF MINING CLAIM—EXTENDING LIMITS UNDER NEW NAME.
A locator may relocate his mining claim, including additional vacant ground unclaimed by others, under a different name, and convey it by the designation of the last name.

4. RIGHT TO LOCATE MINING CLAIM—DISCOVERY OF LODE OR VEIN.
Seams containing mineral-bearing earth and rock, discovered on a claim before its location, were similar to seams that had induced other miners to locate claims in the same district, and which by development had proved to be a part of a well-defined lode or vein containing ore of great value. *Held* a sufficient compliance with Rev. St. § 2320, requiring the discovery of a lode or vein within the limits of a claim before a valid location thereof can be made.

Gilbert, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Northern Division of the District of Idaho.

W. B. Heyburn, for appellant.

John R. McBride and Garber & Garber, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. This is a suit in equity brought under the provisions of section 2326 of the Revised Statutes to determine the rights of the respective parties to certain mining ground situated in Yreka mining district, Shoshone county, Idaho. On August 21, 1895, appellant applied for a patent to the Shoshone lode claim. Appellees thereafter filed their protest and an adverse claim against said application, and in due time commenced this suit in support of their claim in the circuit court of the United States for the district of Idaho. Both parties are citizens and residents of the state of Idaho. A demurrer was interposed to the complaint, and overruled by the court. 75 Fed. 37. The cause thereafter came to issue, was tried upon its merits, and resulted in a decree in favor of the appellees. The questions presented by the demurrer will be first considered:

1. Appellant claims that the circuit court had no jurisdiction to try the case. Does the complaint in this case show upon its face that the suit is one arising under the laws of the United States? This question, under the repeated decisions of the courts in this and other circuits, has been, so far as we are advised, universally answered in

87 F.—51

the affirmative. Different grounds have been stated and different reasons assigned by the various courts, but the conclusion has always been the same,—that the circuit courts of the United States have jurisdiction to try all cases instituted under and by virtue of the provisions of section 2326 of the Revised Statutes, independent of the question of citizenship of the respective parties. Frank G. & S. M. Co. v. Larimer M. & S. Co., 8 Fed. 724; Cheesman v. Shreve, 37 Fed. 36; Doe v. Mining Co., 43 Fed. 219; Strasburger v. Beecher, 44 Fed. 209, 213; Burke v. Mining Co., 46 Fed. 644, 646; Wise v. Nixon, 76 Fed. 3, 6. But it is argued by appellant's counsel that all of these decisions have been virtually overruled by the decision of the supreme court in the case of Bushnell v. Mining Co., 148 U. S. 682, 13 Sup. Ct. 771. As we understand the decision in that case, no such question as is here presented was there raised, discussed, or decided. That action was brought in the state court, tried in the state court, and an appeal was taken to the supreme court of the state; and after a petition for rehearing was filed the losing party for the first time suggested that a federal question was involved, to wit, a construction of section 2322 of the Revised Statutes. The petition for rehearing being denied, a writ of error was sued out, and the case taken to the supreme court of the United States. The writ of error was there dismissed upon the ground,—to quote the language of the decision:

"The attempt to raise for the first time a federal question in a petition for rehearing, after judgment, even assuming that the petition presented any such question, is clearly too late. It has been repeatedly decided by this court that a federal question, when suggested for the first time in a petition for rehearing, after judgment, is not properly raised, so as to authorize this court to review the decision of the highest court of the state."

No question was raised as to the competency of the courts, either national or state, to try a case brought under the provisions of section 2326. The only question at issue there, under the pleadings and at the trial, was as to the true course of the lode or vein. The instructions referred to in the opinion had reference to that question only, which was solely a question of fact; and the court said that no federal question was involved,—that is, that no question was raised which called for any construction of section 2322. The other decisions that we have cited go directly to the point raised in this case. In Burke v. Mining Co., 46 Fed. 644, 646, the court said:

"It is claimed on one side, and denied on the other, that this suit, having been brought to determine the title to a mining claim, in pursuance to the requirements of section 2326 of the Revised Statutes, as amended in March, 1881 (1 Supp. Rev. St. p. 609), is for that reason a suit arising under the laws of the United States, within the meaning of the statute giving jurisdiction on that ground, irrespective of the character of the questions involved in the litigation. It seems to us that all the authorities, as they now stand, have determined the question in favor of the affirmative of this proposition."

In Jackson v. Roby, 109 U. S. 440, 3 Sup. Ct. 301, which was a suit brought in the circuit court of the United States for the district of Colorado in support of an adverse claim under the provisions of section 2326 of the Revised Statutes, the court disposed of the case upon its merits, and it is certainly fair to assume that it had no doubts as to its jurisdiction in the premises. In Chambers v. Harrington, 111

U. S. 350, 4 Sup. Ct. 428, it was claimed that a judgment rendered in a suit brought under the provisions of section 2326 of the Revised Statutes was not subject to review in the supreme court. The court said:

"But it is apparent that the statute requires a judicial proceeding in a competent court. What is a competent court is not specifically stated, but it undoubtedly means a court of general jurisdiction, whether it be a state court or a federal court; and as the very essence of the trial is to determine rights by a regular procedure in such court, after the usual methods, which rights are dependent on the laws of the United States, we see no reason why, if the amount in controversy is sufficient in a case tried in a court of the United States, or the proper case is made on a writ of error to a state court, the judgment may not be brought to this court for review, as in other similar cases."

The proceedings required to be commenced, under the provisions of section 2326, in a court of competent jurisdiction, may be brought either in the state or national courts, at law or in equity, as the facts may warrant; but section 2326 does not confer any special jurisdiction on the state courts. When the suits are brought and tried in the state courts, they are subject to the provisions of the state statutes in relation to such cases, and the courts proceed in the manner prescribed by such statutes. The proceedings in the national courts are regulated by the provisions of section 2326, as will more fully appear in the consideration of the next question involved herein. In several Pacific Coast states, statutes have been passed for the purpose of supplementing the provisions of section 2326, and the cases, when tried in the courts of such states, are controlled by such statutes, independent of any other provisions of the state statutes. Rose v. Mining Co., 17 Nev. 25, 52, 27 Pac. 1105; 2 Lindl. Mines, §§ 754, 755, and authorities there cited. In Steel v. Mining Co., 18 Nev. 87, 1 Pac. 450, the court said:

"These actions may be brought by the plaintiff, whether he is in or out of possession of the mining ground in controversy; and the only sensible construction of the law is that each party must prove his claim to the premises in dispute, and that the better claim must prevail."

Now, if there were no statute of the state specially providing for the trial of this class of cases, it might be that the state courts would not be able in all cases to try questions required to be heard and determined by section 2326, as amended. But, be that as it may, our conclusion is that, upon reason and authority, the circuit courts of the United States have jurisdiction to hear and determine the respective rights of the parties in controversies arising under the provisions of section 2326, if the property in controversy exceeds in value the sum of $2,000, independent of the question of the citizenship of the respective parties, or of the fact as to whether or not the case presents any federal question involving the construction of any other provision of the laws of the United States. In other words, that a circuit court of the United States is "a court of competent jurisdiction" to try such cases, within the meaning of those words as used in said statute.

2. The next point raised by the demurrer is "that it appears on the face of the bill that the plaintiff has an adequate remedy at law."

The bill, among other things, alleges that the complainants long prior to August 20, 1895, were, "ever since have been, and now are the owners (subject only to the paramount title of the United States) and in the possession of that certain mine and mining claim containing a lode of rock in place, bearing silver, lead, and other valuable minerals and metals, situate in Yreka mining district, Shoshone county, state of Idaho, called the 'Kirby Fraction Lode and Mining Claim,'" which is particularly described by metes and bounds; that the defendant, claiming to be the owner of an alleged adjacent mining claim, called the "Shoshone Mining Claim," on or about the ———— day of August, 1895, wrongfully caused said Shoshone mining claim to be so surveyed as to crop upon and overlap the said Kirby Fraction lode mining claim, and to include a portion thereof, which is particularly described in the bill; that on or about the 24th day of August, 1895, the said defendant applied for a United States patent at the proper land office; "that in and by said application for patent the defendant set up and wrongfully alleged that it was the owner and in possession of the whole of said Shoshone mining claim, inclusive of the premises last above described, and of the lode therein, part of the Kirby Fraction lode and mining claim, and the property and in the possession of the complainants." The proceeding required, authorized, and directed by section 2326 of the Revised Statutes has no specific relation whatever to the action of ejectment, or to any other common-law action. The object of the proceeding is the determination of the contest in the land office, as to which of the parties, if either, is entitled to receive a patent from the government, —a right which arises out of a full compliance with the laws of congress for the acquisition of a government patent for mineral lands. The proceedings are purely statutory, and their inception is in the land office, not in the courts where the suit is commenced. As was said in Wolverton v. Nichols, 119 U. S. 485, 488, 7 Sup. Ct. 289, 291:

"The proceedings in this case commenced by the assertion of the defendants' claim to have a patent issue to them for the land in controversy. The next step was the filing of an adverse claim by the plaintiffs in the land office, and the present suit is but a continuation of those proceedings, prescribed by the laws of the United States to have a determination of the question as to which of the contesting parties is entitled to the patent. The act of congress requires that the certified copy of the judgment of the court shall be filed in the land office, and shall be there conclusive. And we must keep this main purpose of the action in view, in any decision made with regard to the rights of the parties."

Whatever may be said of the nature and character of these proceedings when tried in the state courts, where the statutes have, as to the forms of action, abolished the distinction which exists in the national courts between law and equity, it must, we think, be conceded that such proceedings are of an equitable nature, and, when brought in the national courts, are to be tried as equity cases. The mere fact that in certain cases an action at law has been deemed sufficient does not change the equitable character of the suit. The suit is brought for special relief, and the judgment required to be entered is such as a court exercising jurisdiction in equity alone could render. This is clearly shown by the court in Hammer v. Mill-

ing Co., 130 U. S. 291, 296, 9 Sup. Ct. 548, where the court, in the course of its opinion, following the views expressed in Basey v. Gallagher, 20 Wall. 670, 679, said:

"The suitor, whatever relief he may ask, is required to state in ordinary, concise language, the facts of his case, upon which he invokes the judgment of the court; but the consideration which the court will give to the questions raised by the pleadings when the case is called for trial or hearing—whether it will submit them to a jury, or pass upon them without any such intervention—must depend upon the jurisdiction which is to be exercised. If the remedy sought be a legal one, a jury is essential, unless waived by the stipulation of the parties; but, if the remedy sought be equitable, the court is not bound to call a jury, and, if it does call one, it is only for the purpose of enlightening its conscience, and not to control its judgment. The decree which it must render upon the law and the facts must proceed from its own judgment respecting them, and not from the judgment of others. The court might therefore have heard this case and disposed of the issues without the intervention of a jury, but, it having called a jury, the trial was conducted in the same manner as a trial of an issue at law. Such is the practice under the system of procedure in the territory" (of Montana).

The determination of the rights of the parties, as required by section 2326, as we have already said, is not necessarily the subject of a common-law action; and a trial thereof on the equity side of the court is certainly not a violation of the provisions of the constitution, which declares that the right of trial by jury shall be secured to all and remain inviolate forever. The equity jurisdiction of the United States courts is not controlled by state legislation. In Perego v. Dodge, 163 U. S. 160, 16 Sup. Ct. 971, the court held that the amendatory act of March 3, 1881 (21 Stat. 505), was not intended to require, and does not require, all suits brought under section 2326 to be actions at law, and to be tried by a jury. In the course of the opinion, in reference to sections 2325 and 2326 the court said:

"Thus, the determination of the right of possession as between the parties is referred to a court of competent jurisdiction, in aid of the land office, but the form of action is not provided for by the statute; and apparently an action at law or a suit in equity would lie, as either might be appropriate under the particular circumstances,—an action to recover possession when plaintiff is out of possession, and a suit to quiet title when he is in possession."

The courts in this circuit have frequently entertained jurisdiction of suits in equity instituted under the provisions of section 2326. In Doe v. Mining Co., 43 Fed. 219, there is a clear enunciation of the principles applicable to this case, substantially in accord with the views herein stated. That case was affirmed in this court in 17 C. C. A. 190, 70 Fed. 458, 462. In Preston v. Hunter, 15 C. C. A. 148, 67 Fed. 996, counsel, being in doubt as to whether the suit should be classed as one in equity or an action at law, sent up two transcripts,—one upon appeal, as required in equity suits; the other upon writ of error, as required in actions at law. This court, without any discussion of the question, considered the case as an equity suit. It follows from the views herein expressed that the court did not err in overruling the demurrer to the bill.

3. This brings us to a consideration of the case upon its merits. It appears from the record that appellees first located a claim on a portion of the ground in dispute, under the name of the "Edith Mining Claim," and recorded the same; that thereafter, before any right of

the appellant was made to the ground, the locators of the Kirby Fraction mining claim made a location "on top of the Edith," and also included more ground.    These locations were made by the same parties.    The Edith was located June 10, 1886, embracing 1,200 feet on the lode; the Kirby, on July 11, 1886, claiming 1,400 feet.    Jacob Johns, one of the locators, testified that after the location of the Edith he found more ground, "and located another claim right over it. It was all our property, anyhow, so we located over it,—right over the top of the Edith.    The location of the Edith was completed before the Kirby was located.    *   *   *   I intended to hold both the Edith and Kirby locations."    In the conveyances made by the locators, they mentioned the Edith as well as the Kirby claim.    Upon these facts appellant contends that, if the Edith location was valid, the Kirby location is void; that the appellees cannot recover upon the Edith title, because they have not set up any title to that claim in their bill; that they cannot recover upon the Kirby title without showing an abandonment of the Edith location.    In considering these questions it must be remembered that the Kirby was located long prior to the Shoshone claim.    The evidence does not show that the ground covered by the Edith location was intended to be abandoned, but it does show that the original locators of the Edith concluded to change the boundaries by adding more ground, and gave a new name to their claim.    The locators had the right to do this, as long as they did not interfere with the rights of other parties.    The fact that the Edith was mentioned in the conveyances does not prove that the parties relied upon the title under that name.    A conveyance of the ground by metes and bounds, by any name of the claim, would be valid and effective.    The name is generally used to designate or identify the claim, but it may be designated or identified by the use of one, or more than one, name, if it is known or called by different names. There is no statute, law, rule, or regulation which prevents locators of mining claims from relocating their own claim, and including additional vacant ground, unclaimed by other parties, under a different name, and conveying it by the designation of the last name.    In Weill v. Mining Co., 11 Nev. 200, 210, where the facts were in some respects similar to the case in hand, there were two locations made by the same parties, known, respectively, as the "Boston" and the "Lucerne."    The Boston was located prior, and the Lucerne subsequent, to the location of the Waller's Defeat, owned by the plaintiff. The question was whether the defendant obtained any title to the Boston ground under a deed conveying the same by the name of the "Lucerne Company's Claims."    The court said:

"If the Boston notice and the Lucerne notice were posted upon and claimed the same lode, a conveyance of his interest in the lode necessarily conveyed his interest in both locations, and it was immaterial by what particular name he designated it.  Phillpotts v. Blasdel, 8 Nev. 61."

4. It is next claimed that there was no sufficient discovery made of any mineral, lode, or vein at the time the Kirby claim was located, and that for that reason the Kirby location was absolutely void.    Upon this point there is some conflict in the evidence, but the weight and preponderance, in its entirety, clearly shows that at the time the loca-

tion was made the locators had discovered a vein, or seams of rock in place, bearing minerals. The discovery was made in running a tunnel, where small seams of iron oxide, quartz, and small quantities of carbonate of lead were found, two or three inches wide. These indications were of such character as miners in that district would follow in the expectation of finding ore, and such as would justify miners in working a claim for that purpose. The rock in these seams was different from the country rock, and was of such character as is designated by the witnesses, who were practical miners, "as a vein containing rock in place, bearing minerals." These facts show that the location was made in good faith, and not "simply upon a conjectural or imaginary existence of a vein or lode," which cannot be permitted. King v. Mining Co., 152 U. S. 222. 227, 14 Sup. Ct. 510. The seams, containing mineral-bearing earth and rock, which were discovered before the location was made, were similar in their character to the seams or veins of mineral matter that had induced other miners to locate claims in the same district, which by continued developments thereon had resulted in establishing the fact that the seams, as depth was obtained thereon, were found to be a part of a well-defined lode or vein containing ore of great value. The discovery made at the time of the Kirby location was therefore such as to justify a belief as to the existence of such a lode or vein within the limits of the ground located. Erhardt v. Boaro, 113 U. S. 528, 536, 5 Sup. Ct. 560. The subsequent developments made after the claim was located, and before the location of the Shoshone, show more clearly the existence of a lode or vein. We are of opinion that the testimony on behalf of appellees is sufficient to show a compliance with the provisions of section 2320. which requires that there must be a discovery of a vein or lode within the limits of the claim before a valid location thereof can be made. In Book v. Mining Co., 58 Fed. 106, 120, the court, in construing this section of the statute, said:

"The words 'vein or lode,' in the last clause of this statute, were evidently intended to apply to such veins or lodes as were described in the first section, and to have the same meaning, viz. a vein or lode 'of quartz or other rock in place bearing gold, silver,' etc. This statute was intended to be liberal and broad enough to apply to any kind of a lode or vein of quartz or other rock bearing mineral, in whatever kind, character, or formation the mineral might be found. It should be so construed as to protect locators of mining claims, who have discovered rock in place, bearing any of the precious metals named therein, sufficient to justify the locators in expending their time and money in prospecting and developing the ground located. It must be borne in mind that the veins and lodes are not always of the same character. In some mining districts the veins, lodes, and ore deposits are so well and clearly defined as to avoid any questions being raised. In other localities the mineral is found in seams, narrow crevices, cracks, or fissures in the earth, the precise extent and character of which cannot be fully ascertained until expensive explorations are made, and the continuity of the ore and existence of the rock in place, bearing mineral, is established. It never was intended that the locator of a mining claim must determine all these facts before he would be entitled, under the law, to make a valid location. Every vein or lode is liable to have barren spots and narrow places, as well as rich chimneys and pay chutes, or large deposits of valuable ore. When the locator finds rock in place, containing mineral, he has made a discovery, within the meaning of the statute, whether the rock or earth is rich or poor, whether it assays high or low. It is the finding of the mineral in the rock in place, as distinguished from float rock, that

constitutes the discovery, and warrants the prospector in making a location of a mining claim."

See, also, Migeon v. Railway Co., 44 U. S. App. 724, 737, 23 C. C. A: 156, and 77 Fed. 249; McShane v. Kenkle, 18 Mont. 208, 44 Pac. 979; Bonner v. Meikle, 82 Fed. 697, 703.

The purpose of the statute in requiring that "no location of a mining claim shall be made until the discovery of a vein or lode within the limits of the claim located" was to prevent frauds upon the government by persons attempting to acquire patents to land not mineral in its character. But as was said in Bonner v. Meikle, supra:

"It was never intended that the court should weigh scales to determine the value of mineral found, as between a prior and subsequent locator of a mining claim, on the same lode."

The location of the Kirby was made in 1886. The discovery of mineral then made was sufficient to induce the locators and their grantees to perform the amount of annual labor thereon as required by the mining laws; to expend their time and money in prosecuting the work thereon, in the belief and expectation of finding ore of profitable value therein. The location of the Shoshone was not made until 1895. There is no good reason why the owners of the Kirby should be deprived of the discoveries made by them in prosecuting the work thereon after the location was made, and prior to the time of the location of the Shoshone claim. The court did not err in admitting the testimony upon this point. North Noonday Min. Co. v. Orient Min. Co., 1 Fed. 522, 531; Jupiter Min. Co. v. Bodie Consol. Min. Co., 11 Fed. 666, 676; Strepey v. Stark, 7 Colo. 614, 5 Pac. 111; Zollars v. Evans, 5 Fed. 172, 175; Patchen v. Keeley, 19 Nev. 405, 415, 14 Pac. 347.

5. We have examined the objections made and exceptions taken by appellant to certain rulings of the court at the trial with reference to the annual assessment work done upon the Kirby claim in the years 1895 and 1896, and find no error therein.

6. Another case between the same parties was commenced in the state court, removed to the United States circuit court, and there tried as an equity suit, and, as it involved the title to the same mining ground, was consolidated, for the purpose of this appeal, with the case above disposed of. In the case brought in the state court, appellant claimed title to the mining ground under the Ibex location. The facts and circumstances as to the location of the Ibex claim are substantially the same as those pertaining to the Shoshone claim. Having arrived at the conclusion that the Kirby claim was a valid location, and it being prior in point of time to the others, it becomes unnecessary to notice any of the questions raised concerning the Shoshone or Ibex locations. The other questions are the same in both cases. The decree in each case is affirmed, with costs.

GILBERT, Circuit Judge (dissenting). In dissenting from that portion of the opinion which deals with the question of the jurisdiction, I am guided solely by what I conceive to be the purport of the decision of the supreme court in the case of Bushnell v. Smelting Co., 148 U. S. 682, 13 Sup. Ct. 771. I am unable to concur in the view

that the only point decided in that case was that the suggestion of a federal question in a petition for rehearing after judgment comes too, late. The jurisdiction of the supreme court in that case was invoked upon two grounds: First, that a federal question was presented upon the pleadings in the case and the instructions to the jury, since it was a case arising under section 2326 of the Revised Statutes; and, second, that a federal question was specially presented in the petition for rehearing which was filed in the supreme court of the state of Colorado, asserting rights under section 2322. The first question was inherent in the case, and appeared upon the face of the record. It required no presentation by petition or otherwise. It was in passing upon the second question that the court ruled that the attempt to raise for the first time a federal question in such a petition, after judgment, was too late. But in dealing with the other question the court said:

"It is plainly manifest that neither the pleadings nor the instructions given and refused present any federal question, and an examination of the opinion of the supreme court affirming the action of the trial court as to instructions given, as well as its refusal to give instructions asked by the defendants below, fails to disclose the presence of any federal question. It does not appear from the record that any right, privilege, or immunity under the constitution or laws of the United States was specially set up or claimed by the defendant below, or that any such right was denied them, or was even passed upon by the supreme court of the state; nor does it appear, from anything disclosed in the record, that the necessary effect in law of the judgment was the denial of any right claimed under the laws of the United States. The decision of the supreme court of Colorado in no way brought into question the validity, or even construction, of any federal statute, and it certainly did not deny to the plaintiffs in error any right arising out of the construction of the federal statutes."

In so ruling upon that question the court had under consideration the very question which is before us in the case at bar, namely, whether the fact that a case arises under section 2326 presents, of itself, a question of the construction of a law of congress. The court expressly held that the pleadings suggested no federal question. The pleadings in that case contained the necessary averments and issues to determine the rights of the contesting claimants under section 2326. It so distinctly appears from the opinion. In that respect the case is identical with the case before us. In the present case there is no suggestion of a federal question, unless it be in the fact that the pleadings raise an issue under section 2326. The other questions which the record contains are similar to those which were submitted to the jury in Bushnell v. Smelting Co. The language above quoted from the opinion in that case applies with equal propriety to the case at bar. I find no allegation in the bill in the present case which suggests that a question arises under a federal statute, or that the right of either party to the suit will depend upon the interpretation to be given to such a statute. If there was no federal question in the case of Bushnell v. Smelting Co., there is none in this. The decisions in that case and in other recent cases in the supreme court have established the doctrine that the United States circuit courts cannot entertain jurisdiction of a cause upon the ground that it presents a question of a federal nature unless it

clearly appears from the averments of the complaint or the declaration that in the progress of the trial, and preliminary to an adjudication, the right of the one or the other of the parties to the controversy will depend upon the construction to be given by the court to some provision of the constitution, laws, or treaties of the United States. Metcalf v. Watertown, 128 U. S. 586, 9 Sup. Ct. 173; Mining Co. v. Turck, 150 U. S. 138, 14 Sup. Ct. 35; Tennessee v. Union & Planters' Bank, 152 U. S. 454, 14 Sup. Ct. 654; Chappell v. Waterworth, 155 U. S. 102, 15 Sup. Ct. 34. The cases of Jackson v. Roby and Chambers v. Harrington, cited in the opinion of the majority of the court, are not in conflict with the foregoing views of the purport and effect of the decision in Bushnell v. Smelting Co. In Jackson v. Roby no question of the jurisdiction was raised, and it may be assumed that the case was one of which the court had cognizance, either upon the ground of the diverse citizenship of the parties, or the federal question suggested by the pleadings. The case of Chambers v. Harrington was in the supreme court upon appeal from a territorial supreme court, and hence no question of the jurisdiction could arise. The language of the court in that case, "And as the very essence of the trial is to determine rights by a regular procedure in such court, after the usual methods, which rights are dependent on the laws of the United States, we see no reason why, if the amount in controversy is sufficient in a case tried in a court of the United States, or the proper case is made on a writ of error to a state court, the judgment may not be brought to this court for review, as in other similar cases," is not inconsistent with the view that, in order that the case made shall be one of federal cognizance, the jurisdiction must be made to appear by a proper averment pointing to the statute which the court shall be called upon to construe. And if, indeed, any expression of the court found in the language so quoted can be construed as countenancing a different doctrine, it is certainly discredited by the later decisions of the supreme court to which reference has been made above.