RALPH v. COLE et al. (two cases).

(Circuit Court of Appeals, Ninth Circuit.   March 8, 1918.   Rehearing Denied
May 13, 1918.)

Nos. 2952, 2953.

MINES AND MINERALS ⬅️38(23)—ACTIONS—SUBMISSION OF ISSUE OF ADVERSE
POSSESSION.

In actions begun in the state court, pursuant to Rev. St. §§ 2325, 2326
(Comp. St. 1916, §§ 4622, 4623), to determine contests over Nevada mining
claims, which were removed to the federal court and consolidated, the
refusal of instructions, requested by defendant, submitting the issue of
adverse possession, which was raised by the evidence, was prejudicial
error; limitations being a defense under the Nevada statutes applicable
to actions to recover mining claims.

Gilbert, Circuit Judge, dissenting.

Appeals from and in Error to the District Court of the United States
for the District of Nevada; Edward S. Farrington, Judge.

Action by George A. Cole and others against Joseph Ralph, begun
in the state court and removed to the federal court, and consolidated
with a second action by the same plaintiffs against the same defendant,
also begun in the state court and removed.   There were judgments for
plaintiffs, and defendant appeals and brings error.   Appeals dismissed,
and in each case judgment reversed and cause remanded.

The basis of these actions were contests which arose in the United States
land office at Elko, Nev., under the provisions of sections 2325 and 2326 of
the Revised Statutes (Comp. St. 1916, §§ 4622, 4623), concerning certain mining
ground situated in the Battle Mountain mining district in Lander county, of
that state.   In the case first above entitled and here numbered 2952, the present
plaintiff in error filed an application in that land office for a patent to various
specifically described lode claims alleged to have been theretofore located by
his predecessors in interest, and among them one called and known as Salt
Lake No. 3 lode, against which application, in so far as concerned the last-
mentioned claim, one or more of the present defendants in error and the
predecessors in interest of the others filed in the land office a protest and
adverse claim, basing their alleged rights upon a placer claim to substantially
the same ground, called Guy Davis placer, located September 6, 1913—years
after the location under which the plaintiff in error claims.

Within the time prescribed by section 2326 of the Revised Statutes one or
more of the present defendants in error and the predecessors in interest of
the others, commenced in the district court of the Third judicial district of
the state of Nevada, in and for the county of Lander, the first of the present
actions against the present plaintiff in error, alleging in substance as follows:

(1) That ever since the ——— day of September, 1913, plaintiffs and their
predecessors in interest were the owners of and in the actual possession and
occupancy of the Guy Davis placer mining claim, 1,500 feet in length by 600
feet in width, said claim being situated in the Battle Mountain mining dis-
trict, county of Lander, state of Nevada, and plaintiffs and their predecessors
in interest ever since have been and now are the owners of and entitled to the
possession of said mining claim.

(2) That plaintiffs are the owners of and entitled to the possession of

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
    249 F.—6

said Guy Davis placer mining claim by virtue of a full compliance with the local laws, rules, and customs of miners in said mining district, the laws of the United States, and the state of Nevada relating to mining claims, and by actual prior possession, location, and discovery thereof by these plaintiffs, their grantors, and predecessors in interest.

(3) That on or about August 1, 1914, the defendant wrongfully and without right entered certain portions of said Guy Davis placer mining claim, and on or about said day said defendant filed in the United States land office at Elko, Nev., diagram and field notes of the Salt Lake No. 3 lode, and also the John John and other lodes, and filed therewith an application for patent of the United States for said Salt Lake No. 3 lode, said application being designated as "M. A. No. 01544, Min. Sur. No. 4175," and caused the register of said land office to give notice of said application for patent by publication, as required by law, in the Battle Mountain Scout, a newspaper published in said mining district at Battle Mountain, Nev., the first publication thereof being made on the 1st day of August, 1914, and in said application said defendant did apply for patent of all of said Salt Lake No. 3 lode, and more particularly described as follows (giving specific description); that by said application for patent, and by said wrongful entry aforesaid, defendant wrongfully and without right entered said Guy Davis placer, and practically all of that part of the Guy Davis placer which is intersected by the exterior lines of said "Sur. No. 4175," as shown by plat marked "Exhibit B," filed on the 24th day of September, 1914, in the land office of the United States at Elko, Nev., with the adverse claim of the present defendants in error against an entry of said "Min. Sur. Co. 4175, Mineral Application No. 01544" for patent, said ground so intersected being described as follows (giving specific description), containing 19.86 acres.

(4) That said adverse claim was filed in the said land office within the period of 60 days of notice of said application for patent to said Salt Lake No. 3 lode, and that the present action was commenced before the expiration of 30 days after the filing of the said adverse claim, and is brought in support thereof.

The prayer of the complaint is for judgment against the defendant to the action, for the recovery of the possession of said Guy Davis placer claim, and for a decree that the plaintiffs are the owners, in the possession, and entitled to the possession, of said placer claim, and for the sum of $500 alleged to have been expended in the preparation of said adverse claim, and for the sum of $500 as damages.

In his answer the defendant to the action denies that the plaintiffs, or either of them, or that their predecessors in interest, are or ever were the owners of, or in actual possession of, or entitled to the possession of, any portion of the "so-called" Guy Davis placer mining claim, by virtue of a full compliance with local laws, rules, or customs of miners in said mining district, or the laws of the United States or the laws of Nevada, relating to mining claims, or by actual prior possession, location, or discovery by plaintiffs, their grantors, or predecessors in interest, or any one, or at all.

The defendant further denies that on the 1st day of August, 1914, or at any other time, or at all, he or his predecessors in interest, or any one on his behalf, wrongfully and without right entered certain portions of said "so-called" Guy Davis placer mining claim, but admitted that on said date he filed in the United States land office at Elko, Nev., an application for patent to the said Salt Lake No. 3 lode claim, together with a like application for patents to the John John and other lodes, and with a diagram and notes of the surveys, and caused the register of the said land office to give the required notice of such applications, and admitted that the first publication thereof was made on the 1st day of August, 1914, and admitted that such application covered all of the ground embraced within the side lines of said Salt Lake No. 3 lode as alleged in the complaint, but denied that any of the said acts were without right, but, on the contrary, alleged that all of them were rightful and in accordance with law.

The defendant further denies that by his said application for patent, or by said entry, or in any other way, he wrongfully or without right entered upon any of the portion of the "so-called" Guy Davis placer, as set forth in the complaint, but, on the contrary, alleges that he is and at all the times mentioned was the owner of and entitled to the possession of all of the ground covered by the adverse claim of the plaintiffs. And by his answer the defendant as a further defense alleges:

(1) That the plaintiffs and each of them are and were at all the times mentioned in the complaint residents and citizens of the state of Nevada, and the defendant a resident and citizen of the state of Utah, and over the age of 21 years.

(2) That the amount involved in the action is over $3,000, exclusive of interest and costs.

(3) That on or about February 2, 1897, the grantors of the defendant, then being citizens of the United States and over the age of 21 years, were, and ever since that date the defendant and his said grantors have been, the owners, in the actual possession of, and entitled to the possession of, the said Salt Lake No. 3 lode mining claim.

(4) That he has and claims the legal right to occupy and possess said Salt Lake No. 3 lode mining claim, by virtue of a full compliance with the local laws, rules, and customs of miners in said mining district, the laws of the United States, and of said state of Nevada, by pre-emption, purchase, and subsequent transfer, and by actual prior possession as a lode mining claim located upon the public domain of the United States.

(5) That on or about February 2, 1897, the grantors and predecessors in interest of the defendant, being then citizens of the United States, entered upon its then unappropriated public domain and located the Salt Lake No. 3 lode mining claim, by then and there marking the boundaries thereof as required by law, and ever since said date the defendant and his grantors were, until September 5, 1913, in the quiet and undisputed possession of said lode mining claim, and during all of said time, and for more than 16 years, the defendant and his grantors and predecessors in interest were in the open, notorious, adverse, and undisputed possession of said mining claim, holding, working, and living thereon; that on or about September 6, 1913, while said claim was so being held, owned, occupied, and possessed by the defendant, his grantors, and predecessors, and with full knowledge, the plaintiffs and their grantors wrongfully and without authority entered upon said lode mining claim, without the knowledge or consent of the said defendant or his grantors, and attempted to locate upon the ground embraced within the said Salt Lake No. 3 lode the Guy Davis placer claim; that by reason of the premises alleged the defendant has become and is now the owner and holder of the said ground and the whole thereof, and that the said attempted location of the plaintiffs and their grantors was and is wholly void and of no effect.

The prayer of the answer is that the plaintiffs take nothing upon their complaint, that judgment be given defendant for the possession of said Salt Lake No. 3 lode mining claim, and for costs of suit.

The reply of the plaintiffs put in issue the affirmative allegations of the answer.

In the second of the suits above entitled, being No. 2953, the pleadings are in all respects similar, except as to the property in controversy. In that action the patents applied for by the defendant to the action were for two lode claims, named, respectively, Midas and Evening Star, across the surface of which the plaintiffs and their predecessors in interest located a placer mining claim called Homestake placer, based upon which claim they filed in the land office a protest against the application of the defendant to the action and asserted their adverse claim to such placer, and in pursuance of which they filed the complaint in the district court of the state of Nevada, in and for Lander county, involved in the second of the actions above entitled.

As illustrative of the respective claims of the parties, the following diagram is inserted, together with some representations found in the record of the character of the surrounding ground:

WORKINGS

| PLAINTIFF | DEFENDANT |
|-----------|-----------|
| Number | Number |
| 1 | 9 |
| 2 | 14 |
| 3 | A |
| 4 | 5 |
| 6 | — |
| 7 | — |
| 8 | — |
| 9 | — |
| 10 | — |
| 11 | — |
| 12 | — |
| 13 | — |
| 14 | — |
| 15 | — |
| 16 | — |
| 17 | — |
| 18 | — |
| 19 | — |
| 20 | 60 |
| 21 | 25 |
| 22 | 42 |
| 23 | 53 |
| 24 | 69 |
| 25 | — |
| 26 | D |
| 27 | — |
| 28 | — |
| 29 | B |
| Mill Cut | (21) |

MAP OF MINING CLAIMS INVOLVED
COMPILED FROM
PLAINTIFF'S EXHIBIT "A", DEFENDANT'S EXHIBIT "5"

DEFENDENT'S EXHIBIT No. 2.

COPPER CANYON

Showing topography, contour of bed rock, and evident depth of soil at different points, about the buildings on Salt Lake No. 3, looking south.

The two actions were by stipulation of the respective parties thereto consolidated and tried together in the court below upon the same evidence, and resulted in a general verdict in each case in favor of the plaintiffs, together with a special verdict to the effect that there was no valid discovery of mineral within either of the lode claims relied on by the defendant to the actions, prior to the entry on the ground embraced by them on the part of the plaintiffs and their grantors, upon which verdicts respective judgments were entered in favor of the plaintiffs for the possession of the ground embraced by the respective placer claims.

From those judgments the respective appeals were taken, as well as from the order denying a new trial in each case; the plaintiff in error also suing out a writ of error in each of the cases.

P. G. Ellis, of Salt Lake City, Utah, for appellant and plaintiff in error.

George B. Thatcher, of Carson City, Nev., William Forman, of Tonopah, Nev., F. H. Norcross, of Reno, Nev., and A. A. Rosenshine, of San Francisco, Cal., for appellees and defendants in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). The act of Congress of July 26, 1866 (14 Stat. 251, c. 262), in which provision was made for contests of rival mining claims to mining ground by the filing of adverse claims in the land office and their subsequent trial in a court of competent jurisdiction, was subsequently made more specific by the act of May 10, 1872 (17 Stat. 91, c. 152), and from that carried into the Revised Statutes as sections 2325 and 2326. An amendment to the latter section was made by act approved March 3, 1881 (21 Stat. 505, c. 140 [Comp. St. 1916, § 4625]), by which it was declared:

"That if, in any action brought pursuant to section twenty-three hundred and twenty-six of the Revised Statutes, title to the ground in controversy shall not be established by either party, the jury shall so find, and judgment shall be entered according to the verdict."

Referring to the latter act in the case of Perego v. Dodge, 163 U. S. 160, 167, 168, 16 Sup. Ct. 971, 974 (41 L. Ed. 113), the Supreme Court said that it did not regard it "as intended or requiring all suits under section 2326 to be actions at law and to be tried by a jury"—saying:

"We do not think the intention of this act was to change the methods of trial. Its manifest object was to provide for an adjudication, in the case supposed, that neither party was entitled to the property, so that the applicant could not go forward with his proceedings in the land office simply because the adverse claimant had failed to make out his case, if he had also failed. In other words, the duty was imposed on the court to enter such judgment or decree as would evidence that the applicant had not established the right of possession, and was for that reason not entitled to a patent. The whole proceeding is merely in aid of the land department, and the object of the amendment was to secure that aid as much in cases where both parties failed to establish title as where judgment was rendered in favor of either, and while the finding by a jury is referred to, we think that, where the adverse claimant chooses to proceed by bill to quiet title, and as between him and the applicant for the patent neither is found entitled to relief, the court can render a decree to that effect, just as it would render judgment on a verdict if the action were at law. If Congress had intended to provide that litigation of this sort must be at law, or must invariably be tried by a jury,

it would have said so. There is nothing to indicate the intention thus to circumscribe resort to the accustomed modes of procedure or to prevent the parties from submitting the determination of their controversies to the court." .    .

By section 2325 the applicant for a patent to a mining claim is required to file with his application the evidence of his right to it, and the register of the land office is thereupon required to cause notice of such application to be published in a prescribed way for 60 days, during which time any adverse claimant to any part of the location described in the application is required to file an adverse claim in the land office. The next section—2326—is as follows:

"Where an adverse claim is filed during the period of publication, it shall be upon oath of the person or persons making the same, and shall show the nature, boundaries, and extent of such adverse claim, and all proceedings, except the publication of notice and making and filing of the affidavit thereof, shall be stayed until the controversy shall have been settled or decided by a court of competent jurisdiction, or the adverse claim waived. It shall be the duty of the adverse claimant, within thirty days after filing his claim, to commence proceedings in a court of competent jurisdiction, to determine the question of the right of possession, and prosecute the same with reasonable diligence to final judgment; and a failure so to do shall be a waiver of his adverse claim. After such judgment shall have been rendered, the party entitled to the possession of the claim, or any portion thereof, may, without giving further notice, file a certified copy of the judgment-roll with the register of the land office, together with the certificate of the surveyor general that the requisite amount of labor has been expended or improvements made thereon, and the description required in other cases, and shall pay to the receiver five dollars per acre for his claim, together with the proper fees, whereupon the whole proceedings and the judgment roll shall be certified by the register to the Commissioner of the General Land Office, and a patent shall issue thereon for the claim, or such portion thereof as the applicant shall appear, from the decision of the court, to rightly possess. If it appears from the decision of the court that several parties are entitled to separate and different portions of the claim, each party may pay for his portion of the claim, with the proper fees and file the certificate and description by the surveyor general, whereupon the register shall certify the proceedings and judgment roll to the Commissioner of the General Land Office, as in the preceding case, and patents shall issue to the several parties according to their respective rights. Nothing herein contained shall be construed to prevent the alienation of the title conveyed by a patent for a mining claim to any person whatever."

It will be seen from the express language of this statute that the question so to be transferred from the land office to a court of competent jurisdiction for decision is that of the right of possession of the mining ground, respecting which the contest has arisen in the land office—the title to the ground of course remaining in the government for disposal in accordance with the judgment of the court and after compliance with all the other requirements of the statute. No form of action is prescribed by the statute, and no court other than one of competent jurisdiction is designated.

Prior to the passage of any mining law by Congress, both the Land Department and the courts always acted upon the rule that all mineral locations were to be governed by the local laws, rules, and customs in force at the time of the location. Glacier Mining Co. v. Willis, 127 U. S. 471, 482, 8 Sup. Ct. 1214, 32 L. Ed. 172, and cases there cited. That such practice was intended by Congress to be continued is clearly

shown by the express provisions of section 2 of the act of July 26, 1866 (14 Stat. 251), and by section 2332 of the Revised Statutes (Comp. St. 1916, § 4631), the former of which provides, among other things, that:

"Whenever any person or association of persons claims a vein or lode of quartz or other rock in place, bearing gold, silver, cinnabar, or copper, having previously occupied and improved the same according to the local customs or rules of miners in the district where the same is situated, and having expended in actual labor and improvements thereon an amount of not less than $1,000, and in regard to whose possession there is no controversy or opposing claim, it shall, and may be lawful for such claimant or association of claimants to file in the local land office a diagram of the same so extended laterally or otherwise as to conform to the local laws, customs, and usages of miners, and to enter such tract and receive a patent therefor granting such mine," etc.

—and the second of which, to wit, section 2332 of the Revised Statutes, declares, among other things, that:

"Where such person or association, they and their grantors, have held and worked their claims for a period equal to the time prescribed by the statute of limitations for mining claims of the state or territory where the same may be situated, evidence of such possession and working of the claims for such period shall be sufficient to establish a right to a patent thereto under this chapter, in the absence of any adverse claim."

Looking at the scheme presented by sections 2325 and 2326 of the Revised Statutes, said the Supreme Court in Richmond Mining Co. v. Rose, 114 U. S. 576, 584, 5 Sup. Ct. 1055, 1059 (29 L. Ed. 273)—

"and which relates solely to securing patents for mining claims, it is apparent that the law intended, in every instance where there was a possibility that one of these claims conflicted with another, to give opportunity to have the conflict decided by a judicial tribunal before the rights of the parties were foreclosed or embarrassed by the issue of a patent to either claimant. The wisdom of this is apparent when we consider its effect upon the value of the patent, which is thereby rendered conclusive as to all rights which could have been asserted in this proceeding, and that it enabled this to be done in the form of an action in a court of the vicinage, where the witnesses could be produced, and a jury, largely of miners, could pass upon the rights of the parties under instruction as to the law from the court. It is in full accord with this purpose that the law should declare, as it does, that when this contest is inaugurated the land officers shall proceed no further until the court had decided, and that they shall then be governed by that decision; to which end a copy of the record is to be filed in their office. They have no further act of judgment to exercise. If the court decides for one party or the other the Land Department is bound by the decision. If it decides that neither party has established a right to the mine or any part of it, this is equally binding as the case then stands. With all this these officers have no right to interfere. After the decision they are governed by it. Before the decision, once the proceeding is initiated, their function is suspended."

In the subsequent case of Iron Silver Mining Co. v. Campbell, 135 U. S. 286, 299, 10 Sup. Ct. 765, 769 (34 L. Ed. 155), the same court, in speaking of the same statute, said:

"The purpose of the statute seems to be that, where there are two claimants to the same mine, neither of whom has yet acquired the title from the government, they shall bring their respective claims to the same property, in the manner prescribed in the statute, before some judicial tribunal located in the neighborhood where the property is, and that the result of this judicial investigation shall govern the action of the officers of the land department in

determining which of these claimants shall have the patent, the final evidence of title, from the government."

Neither the specific courts authorized by section 2326 to try the right of possession of the ground to which conflicting claims arise in the land office, nor the character of such actions being designated by the statute, different rulings were made by the courts, many holding, as was done by a number in this circuit—Shoshone Mining Co. v. Rutter et al., 87 Fed. 801, 31 C. C. A. 223, Doe v. Waterloo Mining Co. (C. C.) 43 Fed. 219, and other cases there referred to—that such actions were equitable in their nature, and that the federal courts had jurisdiction of them regardless of the citizenship of the parties; but on appeal of the case of Shoshone Mining Co. v. Rutter et al., reported in 177 U. S. 505, 20 Sup. Ct. 726, 44 L. Ed. 864, the Supreme Court, while conceding that the question was not free from doubt, held that, inasmuch "as the 'adverse suit' to determine the right of possession may not involve any question as to the construction or effect of the Constitution or laws of the United States, but may present simply a question of fact as to the time of the discovery of mineral, the location of the claim on the ground, or a determination of the meaning and effect of certain local rules and customs prescribed by the miners of the district, or the effect of state statutes, it would seem to follow that it is not one which necessarily arises under the Constitution and laws of the United States," and accordingly concluded that while such suits may sometimes so present questions arising under the Constitution and laws of the United States that the federal courts will have jurisdiction regardless of the citizenship of the parties, yet the mere fact that a suit is an adverse suit authorized by the statutes of the United States is not in and of itself sufficient to vest such jurisdiction, and reversed the judgment appealed from.

From the pleadings in the present cases it is plain that they were actions at law in which the sole issue was the right of possession of the respective mining claims. Being such, the parties were of right entitled to a jury trial; besides which it appears from the records that they expressly stipulated for such a trial in the court below, to which court the cases were, on motion of the defendant thereto, transferred from the state court in which they were commenced, because of the diverse citizenship of the parties.

It is apparent from what has already been said that the issue in the cases depended for its determination upon the above-cited provisions of the statutes of the United States and upon the local laws, rules, and customs of the state and district where the ground in dispute is situate, applied to the facts of the case. A statute of limitations of Nevada regarding mining claims originally enacted as early as November 21, 1861, as amended in 1867, reads as follows:

"3706. Sec. 4. No action for the recovery of mining claims, or for the recovery of the possession thereof, shall be maintained, unless it appear that the plaintiff, or those through or from whom he claims, were seized or possessed of such mining claim, or were the owners thereof, according to the laws and customs of the district embracing the same, within two years before the commencement of such action. Occupation and adverse possession of a mining claim shall consist in holding and working the same, in the usual and cus-

tomary mode of holding and working similar claims in the vicinity thereof. All the provisions of this act, which apply to other real estate, so far as applicable, shall be deemed to include and apply to mining claims: Provided, that in such application 'two years' shall be held to be the period intended whenever the term 'five years' is used; and provided, further, that when the terms 'legal title' or 'title' are used, they shall be held to include title acquired by location or occupation. according to the usages, laws, and customs of the district embracing the claim." Cutting's Compiled Laws of Nevada, 1861–1900.

By virtue of that statute and of the provisions of section 2332 of the Revised Statutes, the defendant to these actions in his answer to the complaints set up, among other defenses, that on or about February 2, 1897, the grantors of the defendant, being then citizens of the United States, entered upon its then unappropriated public domain and located the Salt Lake No. 3 lode mining claim, by then and there marking the boundaries thereof as required by law, from which time the defendant and his grantors and predecessors in interest remained in the open, notorious, adverse, and undisputed possession of the said lode mining claim, holding, working, and living thereon; that on or about September 6, 1913, while the said claim was so being held, owned, occupied, and possessed by the defendant, the plaintiffs and their grantors, with full knowledge, wrongfully and without authority entered upon said lode mining claim, without the knowledge or consent of the said defendant, and attempted to locate upon the ground embraced within the said Salt Lake No. 3 lode the Guy Davis placer claim, which attempted location of the plaintiffs and their grantors was and is wholly void and of no effect, and that by reason of the premises alleged the defendant became and now is the owner and holder of the said Salt Lake No. 3 lode claim and the whole of the ground embraced thereby.

In support of that plea of the statute of limitations the defendant to the actions introduced much evidence tending to support it, and going to show that the Salt Lake No. 3, Midas, and Evening Star were three of a dozen or more neighboring lode claims known as the Copper Canyon group of mines that were located by the predecessors in interest of the plaintiff in error many years before the entry upon the same by any of the defendants in error or any of their predecessors in interest and that all of such lode claims have been duly patented by the government except the three here in contest. Evidence was given that the Salt Lake No. 3 was located by two men named, respectively, Clive and Johnson, on the 2d day of February, 1897, and the Midas and Evening Star by Joseph and William T. Jurey March 27, 1907, and that the notices of location thereof were duly recorded and recited on their face the discovery of a vein within the ground so located. Evidence was given of the performance of the required annual assessment work on each of the lode claims in dispute by the locators thereof and their successors in interest, and tending to show their continued adverse occupancy by the successors in interest of the original locators and the doing from time to time of a large amount of work thereon—there having also been erected on the Salt Lake No. 3 claim, as will be seen from the photographs that have

been inserted, a mill and other buildings, in one of which houses a watchman of the properties was at all times kept during the times when active work thereon was suspended. Evidence was also given on the part of the plaintiff in error tending to show that, prior to the entry upon any of the ground here in controversy by the defendants in error or any of their predecessors in interest, the plaintiff in error or his predecessors in interest had discovered in the gravel of the narrow canyon that comes down from the hills placer gold, and that that discovery was the cause of an inrush of people, among whom were one or more of the present defendants in error and the predecessors in interest of the others of them, the latter of whom proceeded to make the placer locations Guy Davis and Homestake on the ground previously located by the predecessors in interest of the plaintiff in error.

The record shows without dispute that the sole basis of such intrusion upon the actual possession of the plaintiff in error was and is the contention that no discovery of a lode or vein was ever made within the boundaries of either the Salt Lake No. 3, Midas, or Evening Star lode claims. That discovery of a vein or lode within its boundaries is essential to the validity of any lode claim is beyond question, and the law is well settled that at any time previous to such discovery ground within the boundaries of such a claim, although within the actual possession of the claimant, is open to the entry of others by any legal means for the purpose of locating it under the mining laws. See the numerous cases cited in the recent case of Consolidated Mut. Oil Co. v. United States, 245 Fed. 521, —— C. C. A. ——.

In the present cases, however, the record shows that there was much evidence introduced on the part of the plaintiff in error tending to show, not only that there was such a discovery within the boundaries of each of the lode claims here in controversy years before the entries thereon and the placer locations under which the defendants in error claim, but that for many years those lode claims had been possessed, worked, and claimed as lode mining ground adversely to all the world except the government. There was, therefore, ample basis in the evidence for some of the instructions to the jury requested by the plaintiff in error on the question of such adverse holding by him and his predecessors in interest, all of which the court below refused to give, to which ruling exceptions were duly reserved. That error was thereby committed, requiring a reversal of the judgments appealed from, we think clear. We need only cite the case of 420 Mining Co. v. Bullion Mining Co., 9 Nev. 241, where the Supreme Court of Nevada said:

"To avoid the statute of limitations, it is claimed by appellant that this action is brought under an act of Congress, and hence that the limitations provided for by the statute of this state do not apply. The act of Congress provides that, where an adverse claim is filed within the time and in the manner specified in said act, certain proceedings 'shall be stayed until the controversy shall have been settled or decided by a court of competent jurisdiction, or the adverse claim waived. It shall be the duty of the adverse claimant, within 30 days after filing his claim, to commence proceedings in a court of competent jurisdiction to determine the question of the right of possession and prosecute the same with reasonable diligence to final judgment, and a failure to do so shall be a waiver of his adverse claim.' The act fur-

ther provides that 'after such judgment shall have been rendered, the party entitled to the possession of the claim * * * may * * * file a certified copy of the judgment roll with the register of the land office,' and upon compliance with this and other provisions in said act 'a patent shall issue thereon for the claim, or such portion thereof as the applicant shall appear, from the decision of the court, to rightly possess.' U. S. Stats. 1872, p. 91, § 7. Congress did not, by the passage of this act, or by the acts passed July 26, 1866, and July 9, 1870, confer any additional jurisdiction upon the state courts. The object of the law, as we understand it, was to require parties protesting against the issuance of a patent to go into the state courts of competent jurisdiction, and institute such proceedings as they might under the different forms of action, therein allowed, elect, and there try 'the rights of possession' to such claim and have the question determined. The acts of Congress do not attempt to confer any jurisdiction, not already possessed by the state courts, nor to prescribe a different form of action. If the parties protesting are in possession of the ground in dispute, they can bring their action under section 256 of the Civil Practice Act (Stats. 1869, p. 239), or, if they have been ousted from the possession, they could bring their action of ejectment; and in either action 'the rights of possession' to such claim could be finally settled and determined. We are of opinion that when the action is brought, whatever may be its character, it must be tried by the same rules, governed by the same principles, and controlled by the same statutes that apply to such actions in our state courts, irrespective of the acts of Congress. The fact, as found by the court, that the defendant had been in the actual, exclusive, and uninterrupted occupation and possession of all the mining ground in dispute, claiming title thereto adversely to plaintiff, for more than seven years prior to the commencement of this suit constitutes a complete bar to this action. 1 Comp. Laws, 243, 244, §§ 4, 5. To have maintained any action in our state courts 'to try the rights of possession' to a mining claim, the plaintiff must have shown that it, or those through or from whom it claims, 'were seized or possessed of such mining claim, or were the owners thereof, according to the laws and customs of the district embracing the same, within two years before the commencement of such action.' 1 Comp. L. 1019, § 4.''

Besides the testimony of the witnesses regarding the essential discovery within each of the lode claims and regarding the adverse holding and working of the disputed ground by the plaintiff in error and his predecessors in interest for much more than the period prescribed by the statute of limitations, each of the notices of location of the lode claims in controversy, duly recorded, expressly recited, as has been said, the fact of such discovery. Such recital we held in the case of Vogel v. Warsing, 146 Fed. 949, 951, 77 C. C. A. 199, 201, "creates a presumption of discovery of mineral and of a valid location." See, also, Harris v. Equator Mining & Smelting Co. (C. C.) 8 Fed. 863; Cheesman v. Shreeve (C. C.) 40 Fed. 791; Cheesman v. Hart (C. C.) 42 Fed. 98.

The appeals are dismissed, and in each case the judgment is reversed, and the cause remanded to the court below for a new trial.

HUNT, Circuit Judge (concurring). Among other requests for instruction upon adverse possession, the defendant asked the court to charge as follows:

"The court instructs the jury that if you find from the evidence that the defendant and his grantors had entered and held possession of the lode mining claims involved in these actions, and worked the same in the usual and customary way in the vicinity thereof for a period of two years prior to the making of the placer locations of the plaintiffs, then the law presumes in aid thereof that all the acts necessary to a valid location of said lode mining claims had

been done and performed at the time of such lode mining locations, and that such possession (having the legal effect of a location under the law) is sufficient to give the defendant's grantors a lawful right to the possession of said mining claims, if kept alive as required by law, as against the subsequent placer locations of the plaintiffs' grantors."

The court, however, entirely disregarded the question of adverse possession, and said:

"In the first place, I don't think there is any adverse possession in the case, so the instructions based on adverse possession will not be given. I exclude them, not because they do not correctly state the law, but simply because I regard them as unnecessary."

Thus the jury were not advised that any presumption existed by reason of long-continued possession, claim, and working or improvement by defendant, and the court expressly confined the issues to the question of a valid discovery by the lode locators prior to the time when the placer locators went on the ground. Refusal to consider and instruct upon the question of adverse possession I think was material error. Open and exclusive possession had been in defendant or his predecessors for years. It was accepted that location notices in compliance with law had been posted and filed, that the annual assessment work had been done, and that much additional expenditure was made upon the claims before the placer locations were filed. Witnesses also testified to facts tending to show the existence of veins and lodes at the time of original location; and the general mineral character of the country was not disputed. This evidence made a strong prima facie conclusion as against the placer claimants in favor of discovery by defendant. It established a presumption whereby the truth of a discovery was to be assumed, and the legal consequences attaching to it, and the burden thrown upon the plaintiff by reason of the presumption, should have been explained to the jury. As a general rule the benefit of such a presumption is specially important in a mining case, for it might very properly, in a case otherwise difficult to solve, save the rights of a mine owner as against one who, after many years have gone by, seeks to maintain another location, contending that there never was a discovery by the original locator. Common experience tells us that death or inability to gather witnesses often makes it practically impossible to prove as an affirmative physical fact an original discovery of mineral at the time of location. The presumption should serve as evidence in favor of the claimant until his opponent has produced evidence which overthrows the presumption. It seems to me that any other rule would imperil the value of unpatented mines located a long time ago and conveyed by the locators to bona fide purchasers who may have expended large sums in development. In commenting upon the reasonableness of the presumption in favor of discovery where there has been staking off, location filing, possession for years, and prosecution of work, Judge Philips, in Cheesman v. Hart (C. C.) 42 Fed. 98, said:

"After this he sells to an honest man, and passes out of view or dies. All the subsequent workings go to show the existence of a lode or vein on the claim of more or less importance. Can it be that after the lapse of many years the assignee must lose his claim because of his inability to produce

the lost or the dead, and prove affirmatively an actual visible discovery by the original locator of ore in place where he dug? Possibly the charge in this particular would have been more theoretically correct, had the court told the jury that it was not necessary that defendants should establish such discovery by witnesses to the physical fact at the time. But the same might be inferred from the certificate of location, the manifestations of workings done, the long tenure of the claim, the development of a vein on the claim by subsequent working, and from all the surrounding circumstances."

GILBERT, Circuit Judge (dissenting). The court below properly submitted to the jury the question whether a valid discovery had been made by the lode locators prior to the placer locations and discoveries, and instructed the jury that the locators of the placer claims had each performed all of the acts necessary and required by the statutes of the United States and the laws of the state of Nevada in the discovery and location of a placer claim. No exception was taken to that instruction. Again, the court said to the jury:

"A competent person may go on the public domain of the United States with the bona fide intention of making a discovery of mineral, and may define the boundaries of his claim by means of notices and monuments thereon, and so long as such locator is in the actual possession of the location so defined, endeavoring to make a discovery, he will be entitled to the peaceable possession of such claim, as against one entering thereon as a trespasser; but in the absence of a discovery, should he permit another competent person to go peaceably upon the claim, and should such person make a valid discovery of mineral, and locate the same, and in all things comply with the requirements as to monumenting, posting notices, and recordation, then such subsequent locator would acquire title to such claim so located, subject only to the paramount title of the United States."

The jury returned three special verdicts, finding that no valid discovery of a lode within the limits of either of the lode claims was made by the defendant or his grantors prior to the dates when the placer claims were located. In the opinion of the majority of this court the judgment of the court below is to be reversed for the refusal of the trial court to give a requested instruction on the subject of adverse possession. The statute of Nevada fixes a period of two years as necessary for title by adverse possession, and provides that the "occupation and adverse possession of a mining claim shall consist in holding and working the same in the usual and customary mode of holding and working similar claims in the vicinity thereof." It is by that statute that the defendants' claim of adverse possession must be measured. The defendant had pleaded adverse possession, but not in the language of the statute. He alleged only that he and his predecessors in interest had been, for the designated period of time, in the "open, notorious, adverse, and undisputed possession of said mining claim, holding, living and working upon said lode mining claim."

The requested instruction, which was refused, was framed in the language of the statute of limitations of Nevada. It was refused, evidently because the trial court found that there were in the evidence no facts to constitute such adverse possession. In so holding the trial court was clearly right. There was no evidence whatever that the lode claim had ever been worked "in the usual and customary manner of holding and working similar claims in the vicinity," or had ever been

worked at all. All the proof of work done on the lode mining claim prior to the plaintiff's placer locations was proof to show that the annual assessment work had been done thereon. That work consisted in sinking shafts and excavating tunnels on the claims; but in none of them and nowhere on any of the claims was an ore body developed, from none of them was any ore ever taken, and in none of them was there any "working" of a claim. No witness testified that either of the claims had been worked in the usual and customary mode of holding and working similar claims. It seems too clear to require discussion that doing the annual assessment work, building a road upon a claim, or erecting a structure upon it is not working the same as a mining claim. The statute of Nevada can avail the holder of a mining claim by adverse possession only upon the theory that the claim has been shown to be a workable claim, and that the act of working it involves discovery and stands for proof of discovery. If the defendant claimed adverse possession under the statute of Nevada, it was for him, not only to plead the statute, but to prove compliance with the same in all particulars.

I submit that the decision of the majority of the court wholly disregards the provisions of that statute, and commits this court to the proposition that in Nevada mining land, or indeed any land, may be acquired as against all except the United States by filing a location notice, marking the ground, and doing the annual assessment work for a period of two years, and without making a discovery. Such is not the law. The words of the statute are:

"Holding and working the same in the usual and customary mode of holding and working similar claims in the vicinity."

Obviously this should mean more than merely holding. One who locates a claim, remains in the possession thereof, and does the annual assessment work thereon, but makes no discovery, may be conceded to be holding the claim; but he is not working it in the manner prescribed by the statute. If it had been the intention of the Legislature to say that title to a mining claim may be had, as against all but the government, by locating and holding the same and doing the annual assessment work thereon for a period of two years, we must assume that such would have been the language of the act, and, if such had been the language of the act, I submit that it would have been void, for it is a fundamental doctrine of the mining law that one who locates and occupies and does the annual assessment work on mineral land cannot hold the same against another who peaceably, and not fraudulently or clandestinely, locates the ground and is the first to make discovery thereon. Section 2320 of the Revised Statutes says that no location of a mining claim shall be made until discovery of the vein or lode within the limits of the claim located, and numerous decisions affirm the rule that location can rest only upon actual discovery, and that without discovery no rights can be acquired save the right to retain possession while seeking discovery. King v. Amy & Silversmith Min. Co., 152 U. S. 222, 227, 14 Sup. Ct. 510, 38 L. Ed. 419; Mining Co. v. Tunnel Co., 196 U. S. 337, 345, 25 Sup. Ct. 266, 49 L. Ed. 501; Jupiter Min. Co. v. Bodie

Consol. Min. Co. (C. C.) 11 Fed. 666; Steele v. Tanana Mines R. Co., 148 Fed. 678, 78 C. C. A. 412. The true doctrine is stated in Humphreys v. Idaho Gold Mines Development Co., 21 Idaho, 126, 120 Pac. 823, 40 L. R. A. (N. S.) 817, where the court said:

"It still remains, however, for the person who asserts claim by adverse possession to have made a mineral discovery, and to have performed the annual assessment work, and to have had the boundaries of his claim so marked and indicated as to afford actual notice of the extent and boundaries of his claim and possession, and to have maintained an actual possession and excluded all adverse claimants for the full period prescribed by the statute."

Our decision in Vogel v. Warsing, 146 Fed. 948, 951, 77 C. C. A. 199, sustaining a prima facie presumption of discovery, and other similar cases cited in the opinion of the majority of this court herein have no application to the present case. There is no place here for the indulgence of a presumption of discovery. The question of discovery by the lode claimants was directly placed in issue. It was a question of fact. It was the principal issue in the case. The defendant presented all his available testimony to show actual discovery. The jury by special verdicts on that issue alone found that there was no discovery.